**PBT**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| BIG 3 PACKAGING, LLC, | ) |
| Plaintiff, | ) |
| v. | ) |
| AQUA CHEMPACS, LLC | ) |
| and | ) |
| SIMONIZ USA, INC. | ) |
| and | ) |
| STEPHEN SENECA | ) |
| and | ) |
| NATIONAL ACCOUNT SOURCING, INC. | ) |
| and | ) |
| FLOOR MECHANICS, LLC | ) |
| Defendants | ) |

**12  5806**

Civil Action No. _____
**JURY TRIAL DEMANDED**

### BIG 3 PACKAGING, LLC'S COMPLAINT FOR PATENT
### AND TRADEMARK INFRINGEMENT

Plaintiff, Big 3 Packaging, LLC ("B3P"), by counsel, for its Complaint against

Defendants, Aqua ChemPacs, LLC ("Aqua ChemPac"), Simoniz USA, Inc. ("Simoniz"), Mr.

Stephen Seneca, National Account Sourcing, Inc. ("NAS"), and Floor Mechanics, LLC "Floor

Mechanics") state:



1.      Dickler Chemical, LLC, a local Philadelphia company, started a water-soluble clean packet business and later became affiliated with Pak-It LLC.   In early 2012, B3P, also headquartered here in Philadelphia, properly acquired Dickler Chemical, LLC's and Pak-It, LLC's business assets and has continued and expanded on those businesses.  Instead of properly purchasing these companies assets, Mr. Seneca, a former officer and/or long-time employee/sales representative of Dickler Chemical and Pak-It, LLC started a competing business known as Aqua ChemPac and decided to just use Dickler Chemical's and Pak-It, LLC's intellectual property, which is now owned by B3P, and has been willfully violating B3P's patent and trademark rights. B3P brings this action for damages and to enjoin the willful use of its intellectual property.

## THE PARTIES

2.      B3P is a New Jersey limited liability company with its principal place of business at 4201 Torresdale Avenue, Philadelphia, Pennsylvania, 19124.  B3P is in the business of, *inter alia*, selling unit-dose, water-soluble packaging solutions for industrial and consumer applications.

3.      Aqua ChemPac is a privately-held Delaware limited liability company that has its principal place of business at 515 Andrews Road, Trevose, PA 19053.  Aqua ChemPac competes with B3P and is in the business of, *inter alia*, selling unit-dose, water-soluble packaging solutions for industrial and consumer applications.

4.      Simoniz is a privately held Connecticut company that is headquartered at 201 Boston Turnpike, Bolton, CT 06043.  Simoniz distributes and sells Aqua ChemPac's products.   On information and belief, at least one Simoniz shareholder also has an ownership interest in Aqua ChemPac.

5.      On information and belief, Mr. Stephen Seneca is an individual residing at 9140 NW 47 Court, Coral Springs, Florida 33067 and is employed by Aqua ChemPac at 515 Andrews Road,

2

Trevose, PA 19053. On information and belief, Mr. Seneca has an ownership interest in Aqua ChemPac.

6. National Account Sourcing, Inc. is a Florida corporation whose principal place of business is Mr. Seneca's house located at 9140 NW 47 Court, Coral Springs, Florida 33067. Mr. Seneca incorporated NAS. On information and belief, Mr. Seneca is the only officer and director of NAS, and NAS has no real business, is a sham company, and was used by Seneca to register the domain name www.pakit.com.

7. Floor Mechanics, LLC is a privately held Delaware company whose principal place of business is 10187 J Street, Omaha, Nebraska, 68127-1118. Floor Mechanics operates the www.floormechanics.com web site where it sells Aqua ChemPac products by using B3P's PAK-IT® trademark and/or confusingly similar marks.

## JURISDICTION & VENUE

8. This is an action for patent infringement arising under the patent laws of the United States, including 35 U.S.C. §§ 271, 281, 283, 284 and 285. This action also arises under the Lanham Act 15 U.S.C. § 1051 *et seq.* for, *inter alia*, trademark infringement, trademark dilution, unfair competition, and cybersquatting. This action also arises under the Commonwealth of Pennsylvania's common and statutory law for, *inter alia*, trademark infringement, trademark dilution, and unjust enrichment.

9. This Court has subject matter jurisdiction over the patent infringement and Lanham Act claims pursuant to 28 U.S.C. §§ 1338(a), 1331, 2201 and 2202; 15 U.S.C. § 1121.

10. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, as Plaintiff's common law and statutory claims are substantially related to Plaintiff's Federal claims such that they form part of the same case or controversy.

11.     This Court has personal jurisdiction over Aqua ChemPac because Aqua ChemPac, *inter alia,* has a principal place of business in this District and is subject to jurisdiction in this Court under the Pennsylvania Long-Arm statute, 42 Pa.C.S.A. §§ 5301 and 5303; engages in a persistent course of conduct in this District in the Commonwealth of Pennsylvania, and expects, or reasonably should expect, its acts to have legal consequences in this District in the Commonwealth of Pennsylvania, and Aqua ChemPac (a) has committed acts of patent infringement such as selling and offering for sale the infringing products described herein within this District and/or induced (*e.g.*, instructing and supplying others with infringing products and instructions for use) acts of patent infringement by others (*e.g.*, using the infringing products defined herein) in this District; (b) Aqua ChemPac regularly does business, solicits business, engages in other persistent courses of conduct, and/or derives substantial revenue from products and/or services provided to individuals in this District in the Commonwealth of Pennsylvania; and (c) has committed acts of trademark infringement, dilution, cybersquatting, designation of false origin and description, and the other acts complained of herein in this District and caused harm to Plaintiff in this District.

12.     This Court has personal jurisdiction over Simoniz because Simoniz has committed acts of patent infringement such as selling and offering for sale Aqua ChemPac's infringing products described herein within this District and/or induced (*e.g.*, instructing and supplying others with infringing products and instructions for use) acts of patent infringement by others (*e.g.*, using the infringing products defined herein) in this District.

13.     On information and belief, this Court has personal jurisdiction over Mr. Seneca because he is employed by Aqua ChemPac at 515 Andrews Road, Trevose, PA 19053, is subject to jurisdiction in this Court under the Pennsylvania Long-Arm statute, 42 Pa.C.S.A. §§ 5301 and/or

4

5322, and has committed acts of trademark infringement in this District and this Commonwealth by offering for and selling Aqua ChemPac products with the www.pakit.com and www.cleanpackit.com web sites, and committed acts of patent infringement in this District and this Commonwealth by selling and offering for sale infringing Aqua ChemPac products and inducing others within this District, including Aqua ChemPac to commit acts of patent infringement as described herein.

14.     On information and belief, this Court has personal jurisdiction over Floor Mechanics because it advertises and sells, in Pennsylvania and in this District, Aqua ChemPac products by using B3P's PAK-IT® trademark and/or confusingly similar marks on at least its www.floormechanics.com web site and has committed acts of trademark infringement and patent infringement in this District.

15.     On information and belief, this Court has personal jurisdiction over NAS because NAS has committed acts of patent and trademark infringement in this District and Commonwealth and acted as an agent and/or representative of Mr. Seneca and Aqua ChemPac by, *inter alia,* using the www.pakit.com website to automatically direct customers in this District and Commonwealth to Aqua ChemPac.

16.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(b) because a) Aqua ChemPac, Simoniz, and Mr. Seneca do substantial business in this District; b) Aqua ChemPac, Floor Mechanics, NAS, Mr. Seneca, and Simoniz have committed acts of patent infringement in this District; c) Aqua ChemPac's headquarters is located in this District; d) Aqua ChemPac, NAS, Mr. Seneca, and Floor Mechanics have committed acts of trademark infringement and other associated counts within this District; and e) Defendants are subject to personal jurisdiction in this District.

## B3P'S '319 PATENT FACTUAL HISTORY

17.     On March 14, 2000, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 6,037,319 (the "'319 Patent"), entitled "Water-Soluble Packets Containing Liquid Cleaning Concentrates," in the names of Lawrence R. Dickler and J. Barry Ruck.  The issued patent was assigned to Dickler Chemical Laboratories, Inc. ("Dickler Chemical").  A true and correct copy of the '319 Patent is attached to this Complaint as Exhibit A.

18.     In 2007, Pak-It LLC purchased all outstanding shares of Dickler Chemical, and Dickler Chemical become a wholly owned subsidiary of Pak-It LLC.

19.     In 2009, 310 Holdings, Inc. acquired all outstanding shares of Pak-It LLC, Dickler Chemical remained a wholly owned subsidiary of Pak-It LLC.

20.     In 2009, 310 Holdings changed its name to JBI, Inc.

21.     In 2012, B3P acquired assets of Pak-It LLC and Dickler Chemical, including the '319 patent pursuant to an Asset Purchase Agreement between B3P and JBI.  Pursuant to the Asset Purchase Agreement, Dickler Chemical assigned the '319 patent and any claims for past infringement of the '319 patent that Dickler Chemical had to B3P.

22.     Dickler Chemical and B3P exclusively licensed the '319 Patent to Cot'n Wash, Inc. in the "Laundry Product Field" which is defined as packets that are covered by one or more claims of U.S. Patent Nos. 6,037,319 and 6,136,776 used in connection with wet washing fabric care for the purpose of either cleaning, brightening, softening, whitening, or freshening fabrics (fragrance), or removing stains, dirt, oil or odor from fabrics used in the retail trade and does not include commercial laundry business and applications of B3P's products onto dry fabrics or carpets.  B3P otherwise owns all rights in the '319 outside of the "Laundry Product Field."

23.     At all relevant times, B3P and Dickler Chemical have provided notice of the '319 Patent by marking the number of the '319 patent on their packaging in accordance with

35 U.S.C. § 287.

## B3P's PAK-IT® TRADEMARK HISTORY

24.     Lawrence Dickler founded Dickler Chemical in the Philadelphia area in the 1960's. Dickler Chemical had a principal place of business at 4201 Torresdale Avenue, Philadelphia, Pennsylvania, 19124.  Dickler Chemical's business focused on providing professional cleaning and maintenance specialty chemicals.

25.     Dickler Chemicals' products included water-soluble cleaning packets for various applications, including for example, floor cleaners, all-purpose cleaners, bathroom cleaners, auto-scrubb cleaners, and glass and hard surface cleaner.  Dickler Chemical's water soluble products were advantageous because the packets could be placed in water, the packet would dissolve, and the proper concentration of detergent was already apportioned.  Dickler Chemical advertised its products by, *inter alia*, touting the economic and environmental advantages of its products because they eliminated the need for aqueous cleaners in plastic containers and accordingly Dickler Chemical's products resulted in reduced shipping and storage costs.  Dickler Chemical's products also provided environmental advantages because they eliminate the waste associated with plastic containers and they reduce carbon emissions because there is significantly less product to transport as compared to aqueous products.

26.     In November of 1996, Dickler Chemical filed for the PAK-IT® trademark in International Class 003 for all purpose cleaning preparation for, *inter alia,* floor maintenance, carpet care, road surfaces, food service, disinfecting and deodorizing, rest room care, laundry applications, dishwashing, and golf balls.  On April 21, 1998 the mark was registered with Registration No. 2151964, attached hereto as Exhibit B.  From about 1998-2012, Dickler Chemical has been using the PAK-IT® trademark to denote its water-soluble, all purpose cleaning products.  On about

September 22, 2003, Dickler Chemical filed the § 8 declaration and affidavit of continued use and the § 15 declaration and affidavit of incontestability with the U.S. Patent & Trademark Office. On about November 4, 2003, the U.S. Patent & Trademark Office accepted the declarations and affidavits. On about May 5, 2008, Dickler Chemical filed the § 8 declaration and affidavit of continued use and the § 9 declaration and affidavit for renewal. On May 5, 2008, the U.S. Patent & Trademark Office accepted the declarations and affidavits. By virtue of Dickler Chemical's continuous use of the PAK-IT® trademark, the mark has become incontestable pursuant to 15 U.S.C. § 1065.

27.     Dickler Chemical's good and services were sold or otherwise distributed in interstate commerce. From at least about 1998 until February 2012, Dickler Chemical sold and advertised its water-soluble cleaning packets with its PAK-IT® trademark and used the PAK-IT® trademark to denote its water-soluble cleaning packets in this District and throughout the United States.

28.     In February 2012, B3P entered into an asset purchase agreement with JBI and pursuant to that agreement Dickler Chemical assigned the PAK-IT® trademark to B3P along with any causes of action that it owned for past infringement to B3P.

29.     Since early in 2012, B3P has continued Dickler Chemical's business of providing unit-dose, water-soluble packaging solutions for industrial and consumer applications. For example, B3P provides, *inter alia*, unit-dose, water-soluble glass cleaners, hard-surface cleaners, all purpose cleaners, floor cleaners, bathroom cleaners, dishwasher detergents, and carpet cleaners. B3P's goods and services are sold and otherwise distributed in interstate commerce in the United States including within this District. For example, B3P's product line includes the products advertised at http://www.big3packaging.com/ourProducts/index.php. B3P tout's the economic

and environmental advantages of its products, with its "people, planet, profit" marketing plan. http://www.big3packaging.com/.

30.    B3P sells and advertised its water-soluble cleaning packets with its PAK-IT® trademark and has used the PAK-IT® trademark to denote its water-soluble cleaning packets in this District and throughout the United States.  For example, a cover page of a B3P product brochure is shown below:

### B3P PAK-IT® LLC PRODUCT BROCHURE



31.    As a result of Dickler Chemical and B3P's use of the PAK-IT® trademark, the mark has become widely recognized, generated good will, and is exclusively associated by the relevant

consumers, including retailers, the public, and the trade as being high quality products sourced

from B3P and has acquired secondary meaning and become famous under 15 U.S.C.

§1125 (c)(1).

32.     B3P's PAK-IT® trademark registration is valid, in full force and effect, and has not been

canceled, revoked, or abandoned.  The registration of the PAK-IT® trademark constitutes *prima*

*facia* evidence of its validity and conclusive evidence of B3P's right to use the mark in

connection with the goods identified herein.  The PAK-IT® trademark is an incontestable mark

and is actively used by B3P as illustrated in the attached screen shot (Ex. C) of a B3P product

advertisement, wherein the PAK-IT® trademark can be clearly seen used with the ® symbol.

33.     B3P's registration of its PAK-IT® trademark provides sufficient notice to Aqua ChemPac

of B3P's ownership and exclusive rights in the mark.  As described herein, Aqua ChemPac had

actual notice of Dickler Chemical's rights in the PAK-IT® trademark and has actual notice of

B3P's rights in the PAK-IT® trademark.

34.     B3P's PAK-IT® trademark has been in continuous use and has never been abandoned.

## AQUA CHEMPAC FACTUAL HISTORY

34.     Prior to August 2007, Mr. Stephen Seneca was either employed by Dickler Chemical or

affiliated with Dickler Chemical as an independent sales consultant for many years and he had

substantial marketing and sales responsibilities involving Dickler Chemical's water-soluble

cleaning packets.  Due to his involvement with Dickler Chemical, Mr. Seneca had access to

Dickler Chemical's confidential information including its customer lists, product formulas,

know-how, manufacturing, marketing plans, intellectual property, and product specifications,

and its patents and trademarks including the '319 Patent and PAK-IT® trademark.  During Mr.

Seneca's involvement with Dickler Chemical, Mr. Seneca became familiar with Dickler Chemical's business model and products.

35.     On information and belief, in 2007, Mr. Seneca organized a group that formed and incorporated a privately held company called Pak-It LLC. Pak-It LLC's shares were held by Mr. Seneca and by a private equity group organized by Mr. Seneca.

36.     In 2007, Pak-It LLC bought the shares of Dickler Chemical, and Dickler Chemical became a wholly-owned subsidiary of Pak-It LLC. On information and belief, Dickler Chemical was the operating company, and Pak-IT, LLC was a holding company. As a shareholder of Pak-It LLC, Mr. Seneca was an owner of Dickler Chemical.

37.     On information and belief, in about 2007, Mr. Seneca became president of Pak-It LLC and Dickler Chemical. While serving in these roles, Mr. Seneca had access to and was knowledgeable regarding Dickler Chemical's confidential information including its customer lists, product formulas, know-how, manufacturing, marketing plans, intellectual property, and product specifications, and its patents and trademarks including the '319 Patent and PAK-IT® trademark.

38.     310 Holdings, Inc., later known as JBI, Inc., acquired the shares of Pak-It LLC, in 2009. On information and belief, in connection with the acquisition, Mr. Seneca sold his shares in Pak-It LLC, and accordingly was no longer an owner of Pak-It LLC and Dickler Chemical.

39.     After 310 Holdings, Inc. acquired the shares of Pak-It LLC, Mr. Seneca continued to be employed by Pak-It LLC as its president and/or by Dickler Chemical. In these roles, Mr. Seneca had access to and was knowledgeable regarding Dickler Chemical's confidential information including its customer lists, product formulas, know-how, intellectual property, marketing plans,

manufacturing, and product specifications, and its patents and trademarks including the '319 Patent and PAK-IT® trademark.

40.     In about June 2010, Mr. Seneca's employment with Pak-It LLC and Dickler Chemical ended.

41.     Due to his years of involvement with Dickler Chemical and Pak-It, LLC, Mr. Seneca was and is aware of B3P's '319 Patent and its PAK-IT® trademark.

42.     In August 2010, Steve Seneca organized a group that formed Aqua ChemPac.   On information and belief, Steve Seneca became president and/or an officer of Aqua ChemPac. Over time, Mr. Seneca hired away many people from Pak-It LLC and/or Dickler Chemical including but not limited to Bill Paris, the former Chief Financial Officer of Dickler Chemical, Connie Hawk, formley the Vice President of Sales of Dickler Chemical, Verna  Sanchez, formerly employed by Dickler Chemical to coordiante purchasing, Marco Sanchez, formerly employed as Dickler Chemical's plant manage, Scott Annis, Dickler Chemical's warehouse manager, and Joe Solitro, Dickler Chemical's marketing director.

43.     At least as early as 2011, Aqua ChemPac began competing with Dickler Chemical by introducing a substantially similar product line including selling water-soluble cleaning packets. Aqua ChemPac copied Dickler Chemical's business plan of touting the environmental and economic benefits of water-soluble cleaning packets.  For example, Aqua ChemPac touts that it is "working rapidly to offer over 50 cleaning solutions engineered to be environmentally friendly, safe, and easy to use for nearly every cleaning application" (http://www.chempacs.com/Aqua ChemPac-chempacs-product-line).

44.     Aqua ChemPac and Simoniz have been and are selling Aqua ChemPac's water-soluble cleaning packs with the following descriptions, including at least Auto-Scrub Floor Cleaner;

Neutral Floor Cleaner; Heavy-Duty Floor Cleaner; Floor Conditioner & Neutralizer; Sanitary Restroom Cleaner & Deodorizer; Citrus All–Purpose Cleaner; Carpet Extraction Cleaner; Traffic Lane Cleaner; Carpet Stain Remover; Glass And Hard Surface Cleaner; Heavy-Duty multipurpose Cleaner; Non-Acid Bathroom Cleaner; Non-Acid Bathroom and Bowl Cleaner; Dishwashing Detergent; Laundry Detergent; Odor Eliminator And Freshener.  On information and belief, Simoniz has been and is aware of the '319 Patent, at least, by virtue of one of Simoniz's owners also being and owner of Aqua ChemPac.

45.    On information and belief, Aqua ChemPac has provided and does provide its water-soluble packets to Pro Maka to market and sell under a private label.

46.    At least since the summer of 2012, Aqua ChemPac and Floor Mechanics have been using B3P's PAK-IT® trademark or the confusingly similar mark "pak-it" in association with Aqua ChemPac water-soluble cleaning packs, including at least Aqua ChemPac's Glass and Hard Surface Cleaner; Citrus All Purpose Cleaner; Non-Acid Bathroom & Bowl Cleaner and Neutral Floor Cleaner.  For example, Aqua ChemPac and Foor Mechanics have  been selling Aqua Chem's products on the Floor Mechanics website with the "Pak-It" designation, as shown below. True and correct copies of the infringing use of B3P's PAK-IT® trademark are shown in attached website print-outs (Exhibits C-F) taken from www.floormechanics.com.  On Floor Mechanics' website, the mark "Pak-It" is used to describe Aqua ChemPac's water-soluble packs, and to preface the type of cleaner being used, *e.g.* "Pak-It Glass & Hard Surface Cleaner."   On information and belief, Floor Mechanics has been and is aware of the '319 Patent, at least, by virtue of one of Floor Mechanics' employees formerly being employed by Dickler Chemical and being involved with Mr. Seneca.

## <u>Aqua ChemPac's and Floor Mechanic's Use of "Pak-It" for Aqua ChemPac's "Glass and Hard Surface Cleaner"</u>



## Aqua ChemPac's and Floor Mechanics' Use of "Pak-It" for Aqua ChemPac's "All Purpose Cleaner"

Citrus All Purpose Cleaner Spray Bottle

FLOOR™ MECHANICS.COM
Phone: 1-800-372-5090

Search

Home > Aqua ChemPacs > Spray Bottles > Citrus All Purpose Cleaner-Spray Bottle

Citrus All Purpose Cleaner-Spray Bottle
Product ID: B102
SKU: B102

Web Price: $8.50

1 Add to Cart

Description

Citrus All Purpose Cleaner - Color Coded Bi-lingual Replacement Spray Bottle. This is an excellent tool to ensure the right product is in the right bottle fo cleaning task.

* This bottle does not come filled with product. It is a replacement bottle which is color coded for Pak-It Citrus All Purpose Cleaner.

« Previous | Next »

## Aqua ChemPac's and Floor Mechanics' Use of "Pak-It" for Aqua ChemPac's "Bathroom and Bowl Cleaner"

Non Acid Bathroom And Bowl Cleaner For Quarts

FLOOR™ MECHANICS.COM
Phone: 1-800-372-5090

Search

Home > Aqua ChemPacs > Kitchen Laundry Bath > NON-ACID BATHROOM & BOWL CLEANER for quarts

NON-ACID BATHROOM & BOWL CLEANER for quarts
Product ID: Q187
SKU: Q187

Web Price: $17.69

1 Add to Cart

Description

Jar of 20 Pak-Its
One Pak-It yields 1 Qt of cleaner

Pak-It Non-Acid Bowl and Bath Cleaner quickly combats water deposits and other sediments without harsh acids or caustic chemicals. Effectively cleans and deodorizes toilet bowls,urinals, basins, tubs and tile. Biodegradable and phosphate-free.



47.     Aqua ChemPac and Floor Mechanics also use B3P's PAK-IT® trademark as a search term to identify Aqua ChemPac's products and to sell Aqua ChemPac's products including as shown below in the print out from Floor Mechancis' web site.

### Aqua ChemPac's and Floor Mechanics' use of "Pak-It" to Sell Aqua ChemPac's "Bathroom and Bowl Cleaner"



48.     Despite its knowledge that Dickler Chemical, and now B3P, owned the PAK-IT® mark, Mr. Seneca, acting as an agent and/or representative and on behalf of Aqua ChemPac, registered, maintained, and used the domain name www.cleanpackit.com and the associated web site since about December 2011.  Mr. Senecna and Aqua ChemPac sell Aqua ChemPac's water-soluble cleaning products on Mr. Seneca's www.cleanpackit.com web site.  At the time of registration, B3P's Pak-It® trademark was incontestable and distinctive.  Mr. Seneca's www.cleanpackit.com domain name is confusingly similar to and dilutive of B3P's PAK-IT® trademark.   On information and belief, Mr. Seneca and Aqua ChemPac have sold products that B3P would have sold by using the domain name www.cleanpackit.com, which is confusingly similar to and dilutive of B3P's PAK-IT® trademark.

49.     Despite its knowledge that Dickler Chemical owned the PAK-IT® mark, Mr. Seneca, through his company NAS, registered the domain name www.pakit.com in 2007.   B3P's Pak-It® trademark is incontestable and distinctive.  Aqua ChemPac's www.pakit.com domain name is confusingly similar to and dilutive of B3P's PAK-IT® trademark.

50.     On information and belief, Mr. Seneca registered the domain name www.cleanpackit.com on behalf of Aqua ChemPac as its agent or representative, and NAS, operated by Mr. Seneca, is operated on behalf of Aqua ChemPac and as its agent at least in its operation of the www.pakit.com domain name, so that Aqua ChemPac can use these domain names to sell Aqua ChemPac's products.

51.     As of at least September 2012, NAS, Mr. Seneca, and Aqua ChemPac have caused the web address www.pakit.com to automatically direct individuals to Mr. Seneca's www.cleanpackit.com web site.  Thus, on information and belief, Mr. Seneca, NAS, and Aqua ChemPac have willfully and in bad faith used B3P's PAK-IT® trademark to direct customers

looking for B3P's products to Aqua ChemPac. On information and belief, Mr. Seneca and Aqua ChemPac have sold products that B3P would have sold by redirecting customers from the www.pakit.com site to www.cleanpackit.com.

52.     Mr. Seneca and Aqua ChemPac registered and used the domain name www.cleanpackit.com on behalf of Aqua ChemPac, and as its agent and representative, to divert consumers looking for Dickler Chemical and B3P products associated with B3P's PAK-IT® trademark to Aqua ChemPac so that customers would be confused and purchase Aqua ChemPac products and in doing so harmed the goodwill represented by B3P's PAK-IT® trademark for commercial gain or with the intent to dilute B3P's PAK-IT® trademark and/or to create a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site.

53.     On information and belief, NAS has no real business, the corporate form has been disregarded and is a sham, and Mr. Seneca and Aqua ChemPac are individually liable for all activities of NAS because Mr. Seneca and Aqua ChemPac are acting individually through NAS to profit from NAS's domain name www.pakit.com.

54.     Disregarding the incontestability of B3P's PAK-IT® trademark, as well as its common law and statutory rights in its trademark for water-soluble cleaning packs, Aqua ChemPac, Mr. Seneca, NAS, and Floor Mechanics have either knowingly advertised and sold Aqua ChemPac's water-soluble cleaning packets by using the same or a confusingly similar mark to B3P's PAK-IT® mark.

55.     Aqua ChemPac's water-soluble cleaning packets are offered in direct competition to B3P's water-soluble cleaning packs.

56.     Aqua ChemPac's, Floor Mechanics's, NAS's, and Mr. Seneca's use of B3P's trademark PAK-IT® to offer for sale, advertise, distribute, and sell Aqua ChemPac's water-soluble cleaning

packets is a false designation of origin of Aqua ChemPac's products as Dickler Chemical's and now B3P's that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, origin, sponsorship, or approval of Aqua ChemPac's goods and services with Dickler Chemical's and now B3P's goods and services.

57.    Aqua ChemPac's, Floor Mechanics's, NAS's, and Mr. Seneca's use of Dickler Chemical's and now B3P's trademark PAK-IT® to offer for sale, advertise, distribute, and sell Aqua ChemPac's water-soluble cleaning packets is a false designation of origin, false or misleading description of fact, and/or false or misleading representation of fact, that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, origin, sponsorship, or approval of Aqua ChemPac's goods and services with Dickler Chemical's and now B3P's goods and services.

58.    Aqua ChemPac's, Floor Mechanics's, NAS's, and Mr. Seneca's use of Dickler Chemical and now B3P's trademark PAK-IT® to offer for sale, advertise, distribute, and sell Aqua ChemPac's water-soluble cleaning packets is a false designation of origin, false or misleading description of fact, and/or false or misleading representation of fact in commercial advertising and promotion that misrepresents the nature, characteristics, qualities or origin of Aqua ChemPac's goods, services, and commercial activities.

59.    Aqua ChemPac's, Floor Mechanics's, NAS's, and Mr. Seneca's use of Dickler Chemical's and now B3P's trademark PAK-IT® has been a willful attempt to capitalize on Dickler Chemical's and now B3P's goodwill in its PAK-IT® mark and is a blatant attempt to create consumer confusion.

60.    Aqua ChemPac's, Floor Mechanics's, NAS's, and Mr. Seneca's usage of the PAK-IT® trademark has caused B3P injury and irreparable harm.

61.     As a result of Aqua ChemPac's, Floor Mechanics's, NAS's, and Mr. Seneca's acts complained of herein, including infringement of the '319 patent and the PAK-IT® trademark, members of the public and the trade are likely to believe that Aqua ChemPac's water-soluble cleaning packs originate from, or are offered in affiliation with, or sponsored by, or under license from B3P.

62.     Aqua ChemPac's, Floor Mechanics's, NAS's, and Mr. Seneca's use of PAK-IT trademark in conjunction with its all purpose cleaning preparations in the form of water-soluble cleaning packs represented to Dickler Chemical's and now B3P's clientele and potential clientele as well as to the trade and the public that Aqua ChemPac operates under the sponsorship, with the affiliation of, with a license from, or with the approval of Dickler Chemical and B3P.

63.     Persons, including potential customers, familiar with B3P's PAK-IT® trademark, on seeing Aqua ChemPac's, Floor Mechanics's, NAS's, and Mr. Seneca's use of the PAK-IT trademark would be likely to believe and would be justified in so believing that their usage was under the sponsorship of or in affiliation with Dickler Chemical and B3P, or that Dickler Chemical and B3P had approved such usage.

64.     By the acts and activities complained of herein, Aqua ChemPac's, Floor Mechanics's, NAS's, and Mr. Seneca's has passed off its goods as rendered by, or associated with, or connected with, or sponsored by, or under license from, or with the approval of Dickler Chemical and B3P.

65.     Aqua ChemPac's, Floor Mechanics's, NAS's, and Mr. Seneca's acts complained of herein are likely to cause and/or have caused confusion, subliminal confusion, mistake or deception among the trade or public.

66.     Aqua ChemPac's, Floor Mechanics's, NAS's, and Mr. Seneca's infringement complained herein has been willful and deliberate and represents an attempt to appropriate the goodwill that Dickler Chemical and B3P have earned with the PAK-IT® trademark, in order to provide Defendants' recognition and advantage in the marketplace which they would not otherwise possess.

67.     Aqua ChemPac's, Floor Mechanics's, NAS's, and Mr. Seneca's adoption and use of the PAK-IT® trademarks, in connection with water-soluble cleaning packs, was and is: (a) with full knowledge of the registered PAK-IT® trademark, and (b) was and is with the intent and for the purpose, and has had the effect, of wrongfully infringing upon B3P'S PAK-IT® mark.

68.     By trading upon the goodwill of Plaintiff's PAK-IT®, Aqua ChemPac, Floor Mechanics, NAS, and Mr. Seneca have obtained for its goods a salability which they would not have otherwise had.

69.     Dickler Chemical and B3P had and have no control over the quality of goods which are sold by Aqua ChemPac, with the result that Dickler Chemical's and B3P's valuable goodwill with respect to its PAK-IT® trademark may be irreparably damaged by the acts of Aqua ChemPac.

70.     All such the forgoing conduct by Aqua ChemPac, Floor Mechanics, NAS, and Mr. Seneca was and continues to be in bad faith, willful, deliberate, and in knowing violation of the law.

71.     The activities of Aqua ChemPac, Floor Mechanics, NAS, and Mr. Seneca complained of herein have caused and unless restrained and enjoined by the Court will continue to cause, irreparable harm, damage and injury.

## COUNT I – AQUA CHEMPAC'S, SIMONIZ'S, MR. SENECA'S, NAS'S AND FLOOR MECHANICS'S INFRINGEMENT OF THE '319 PATENT

72.     B3P repeats the allegations in paragraphs 1-71 of this Complaint as if fully set forth herein.

73.     Aqua ChemPac has made, or have made, used, sold, and offered for sale, and continues to make, have made, use, sell and offer to sell, within the United States, Aqua ChemPac water-soluble cleaning packets.

74.     Simoniz has, *inter alia*, sold, sells, and offered for sale within the United States Aqua ChemPac water-soluble cleaning packets.

75.     Floor Mechanics has, *inter alia*, sold, sells, and offered for sale within the United States Aqua ChemPac water-soluble cleaning packets.

76.     Mr. Seneca has registered and operated the www.cleanpackit.com website on which he *inter alia*, has sold, sells, and offered for sale within the United States Aqua ChemPac water-soluble cleaning packets.

77.     Aqua ChemPac has directly infringed and is directly infringing claims 1, 6 and 7 of the '319 Patent under 35 U.S.C. § 271(a) by, *inter alia*, making, using, selling, and offering for sale water-soluble cleaning packets, water-soluble cleaning packets under brand names, such as, but not limited to Aqua ChemPac Heavy Duty Multipurpose Cleaner; Carpet & Fabric Stain Remover; Auto-Scrub Floor Cleaner; Neutral Floor Cleaner; Heavy-Duty Floor Cleaner; Floor Conditioner & Neutralizer; Sanitary Restroom Cleaner & Deodorizer; Citrus All–Purpose Cleaner; Carpet Extraction Cleaner; Traffic Lane Cleaner; Carpet Stain Remover; Glass And Hard Surface Cleaner; Non-Acid Bathroom Cleaner; Non-Acid Bathroom and Bowl Cleaner; Laundry Detergent (non Laundry Product Field); and Odor Eliminator And Freshener, each of which is encompassed by at least claims 1, 6, and 7 of the '319 Patent.

22

78.   Simoniz has directly infringed and is directly infringing at least claims 1, 6 and 7 of the '319 Patent under 35 U.S.C. § 271(a) by, *inter alia*, selling and offering for sale water-soluble cleaning packs, water-soluble cleaning packs under brand names, such as, but not limited to Aqua ChemPac Heavy Duty Multipurpose Cleaner; Carpet & Fabric Stain Remover; Auto-Scrub Floor Cleaner; Neutral Floor Cleaner; Heavy-Duty Floor Cleaner; Floor Conditioner & Neutralizer; Sanitary Restroom Cleaner & Deodorizer; Citrus All–Purpose Cleaner; Carpet Extraction Cleaner; Traffic Lane Cleaner; Carpet Stain Remover; Glass And Hard Surface Cleaner; Non-Acid Bathroom Cleaner; Non-Acid Bathroom and Bowl Cleaner; Laundry Detergent (non Laundry Product Field); and Odor Eliminator And Freshener, each of which is encompassed by at least claims 1, 6 and 7 of the '319 Patent.

79.   Floor Mechanics has directly infringed and is directly infringing at least claims 1, 6, and 7 of the '319 Patent under 35 U.S.C. § 271(a) by, *inter alia*, selling and offering for sale water-soluble cleaning packets under brand names, such as, but not limited to Aqua ChemPac Heavy Duty Multipurpose Cleaner; Carpet & Fabric Stain Remover; Auto-Scrub Floor Cleaner; Neutral Floor Cleaner; Heavy-Duty Floor Cleaner; Floor Conditioner & Neutralizer; Sanitary Restroom Cleaner & Deodorizer; Citrus All–Purpose Cleaner; Carpet Extraction Cleaner; Traffic Lane Cleaner; Carpet Stain Remover; Glass And Hard Surface Cleaner; Non-Acid Bathroom Cleaner; Non-Acid Bathroom and Bowl Cleaner; Laundry Detergent (non Laundry Product Field); and Odor Eliminator And Freshener, each of which is encompassed by at least claims 1, 6, and 7 of the '319 Patent.

80.   Mr. Seneca has directly infringed and is directly infringing at least claims 1, 6, and 7 of the '319 Patent under 35 U.S.C. § 271(a) by, *inter alia*, selling and offering for sale water-soluble cleaning packets on his www.cleanpackit.com web site, under brand names, such as, but

not limited to Aqua ChemPac Heavy Duty Multipurpose Cleaner; Carpet & Fabric Stain Remover; Auto-Scrub Floor Cleaner; Neutral Floor Cleaner; Heavy-Duty Floor Cleaner; Floor Conditioner & Neutralizer; Sanitary Restroom Cleaner & Deodorizer; Citrus All–Purpose Cleaner; Carpet Extraction Cleaner; Traffic Lane Cleaner; Carpet Stain Remover; Glass And Hard Surface Cleaner; Non-Acid Bathroom Cleaner; Non-Acid Bathroom and Bowl Cleaner; Laundry Detergent (non Laundry Product Field); and Odor Eliminator And Freshener, each of which is encompassed by at least claims 1, 6, and 7 of the '319 Patent.

81. Aqua ChemPac has indirectly infringed and is indirectly infringing claims at least 1, 6, 7, 15 and 20-22 of the '319 Patent under 35 U.S.C. § 271(b) by, *inter alia*, having knowledge of the '319 patent, knowing that by using the water-soluble cleaning packs Aqua ChemPac's customers, including Simoniz, would infringe claims at least 1, 6, 7, 15, and 20-22, and inducing its customers within the United States to use its water-soluble cleaning packs in a manner that directly infringes at least claims 1, 6, 7, 15, and 20-22 of the '319 patent, including without limitation, Aqua ChemPac Heavy Duty Multipurpose Cleaner; Carpet & Fabric Stain Remover; Auto-Scrub Floor Cleaner; Neutral Floor Cleaner; Heavy-Duty Floor Cleaner; Floor Conditioner & Neutralizer; Sanitary Restroom Cleaner & Deodorizer; Citrus All–Purpose Cleaner; Carpet Extraction Cleaner; Traffic Lane Cleaner; Carpet Stain Remover; Glass And Hard Surface Cleaner; Non-Acid Bathroom Cleaner; Non-Acid Bathroom and Bowl Cleaner; Laundry Detergent (non Laundry Product Field); and Odor Eliminator And Freshener, each of which or their use is encompassed by at least claims 1, 6, 7, 15, and 20-22 of the '319 Patent.

82. Simoniz has indirectly infringed and is indirectly infringing at least claims 1, 6, 7, 15 and 20-22 of the '319 Patent under 35 U.S.C. § 271(b) by, *inter alia*, having knowledge of the '319 patent, knowing that by using the water-soluble cleaning packs Simoniz's customers would

infringe at least claims 1, 6, 7, 15, and 20-22, and inducing its customers within the United States to use its water-soluble cleaning packs in a manner that directly infringes at least claims 1, 6, 7, 15 and 20-22 of the '319 patent, including without limitation, Aqua ChemPac Heavy Duty Multipurpose Cleaner; Carpet & Fabric Stain Remover; Auto-Scrub Floor Cleaner; Neutral Floor Cleaner; Heavy-Duty Floor Cleaner; Floor Conditioner & Neutralizer; Sanitary Restroom Cleaner & Deodorizer; Citrus All–Purpose Cleaner; Carpet Extraction Cleaner; Traffic Lane Cleaner; Carpet Stain Remover; Glass And Hard Surface Cleaner; Non-Acid Bathroom Cleaner; Non-Acid Bathroom and Bowl Cleaner; Laundry Detergent (non Laundry Product Field); and Odor Eliminator And Freshener, each of which or their use is encompassed by at least claims 1, 6, 7, 15 and 20-22 of the '319 Patent.

83.     Floor Mechanics has indirectly infringed and is indirectly infringing at least claims 1, 6, 7, 15 and 20-22 of the '319 Patent under 35 U.S.C. § 271(b) by, *inter alia*, having knowledge of the '319 patent, knowing that by using the water-soluble cleaning packs Floor Mechanics' customers would infringe at least claims 1, 6, 7, 15, and 20-22, and inducing its customers within the United States to use its water-soluble cleaning packs in a manner that directly infringes claims at least 1, 6, 7, 15 and 20-22 of the '319 patent, including without limitation, Aqua ChemPac Heavy Duty Multipurpose Cleaner; Carpet & Fabric Stain Remover; Auto-Scrub Floor Cleaner; Neutral Floor Cleaner; Heavy-Duty Floor Cleaner; Floor Conditioner & Neutralizer; Sanitary Restroom Cleaner & Deodorizer; Citrus All–Purpose Cleaner; Carpet Extraction Cleaner; Traffic Lane Cleaner; Carpet Stain Remover; Glass And Hard Surface Cleaner; Non-Acid Bathroom Cleaner; Non-Acid Bathroom and Bowl Cleaner; Laundry Detergent (non Laundry Product Field); and Odor Eliminator And Freshener, each of which or their use is encompassed by at least claims 1, 6, 7, 15 and 20-22 of the '319 Patent.

84.     Mr. Seneca has indirectly infringed and is indirectly infringing at least claims 1, 6, 7, 15 and 20-22 of the '319 Patent under 35 U.S.C. § 271(b) by, *inter alia*, inducing and having knowledge of the '319 patent and knowing that Aqua ChemPac's water-soluble cleaning packets or their use is covered by at least claims 1, 6, 7, 15 and 20-22 of the '319 patent by inducing Aqua ChemPac and/or Simoniz to directly infringe at least claims 1, 6, 7, 15 and/or 20-22 by making, having made, selling, using, and offer for sale infringing water-soluble cleaning packs, and web site customers to directly infringe by using Aqua ChemPac water soluble packets, including without limitation, Aqua ChemPac Heavy Duty Multipurpose Cleaner; Carpet & Fabric Stain Remover; Auto-Scrub Floor Cleaner; Neutral Floor Cleaner; Heavy-Duty Floor Cleaner; Floor Conditioner & Neutralizer; Sanitary Restroom Cleaner & Deodorizer; Citrus All–Purpose Cleaner; Carpet Extraction Cleaner; Traffic Lane Cleaner; Carpet Stain Remover; Glass And Hard Surface Cleaner; Non-Acid Bathroom Cleaner; Non-Acid Bathroom and Bowl Cleaner; Laundry Detergent (non Laundry Product Field); and Odor Eliminator And Freshener,, each of which or their use is encompassed by at least claims 1, 6, 7, 15 and 20-22 of the '319 Patent.  Mr. Seneca's inducement includes his involvement in the formation and operation of Aqua ChemPac, a competing company to Dickler Chemical and B3P, having Aqua ChemPac adopt substantially the same business as Dickler Chemical and B3P, and having Aqua ChemPac and Simoniz make, have made, use, offer for sale, and/or sell infringing products despite his knowledge of the '319 Patent, operating his www.cleanpackit.com web site on which Mr. Seneca offers for sale and sells Aqua ChemPac infringing products, and operating the www.pakit.com website on behalf of NAS and Aqua ChemPac to cause others to by infringing products from Aqua ChemPac and/or Mr. Seneca.

85.     NAS has indirectly infringed and is indirectly infringing at least claims 1, 6, 7, 15 and 20-22 of the '319 Patent under 35 U.S.C. § 271(b) by, *inter alia*, inducing and having knowledge of the '319 patent and knowing that Aqua ChemPac's water-soluble cleaning packets or their use is covered by at least claims 1, 6, 7, 15 and 20-22 of the '319 patent by inducing Aqua ChemPac to directly infringe at least claims 1, 6, 7, 15 and/or 20-22 by directing customers from its www.pakit.com web site to wwww.cleanpackit.com so that Aqua ChemPac sells and offers for sale infringing water-soluble cleaning packets, including without limitation, Aqua ChemPac Heavy Duty Multipurpose Cleaner; Carpet & Fabric Stain Remover; Auto-Scrub Floor Cleaner; Neutral Floor Cleaner; Heavy-Duty Floor Cleaner; Floor Conditioner & Neutralizer; Sanitary Restroom Cleaner & Deodorizer; Citrus All–Purpose Cleaner; Carpet Extraction Cleaner; Traffic Lane Cleaner; Carpet Stain Remover; Glass And Hard Surface Cleaner; Non-Acid Bathroom Cleaner; Non-Acid Bathroom and Bowl Cleaner; Laundry Detergent (non Laundry Product Field); and Odor Eliminator And Freshener, each of which or their use is encompassed by claims 1, 6, 7, 15 and 20-22 of the '319 Patent.

86.     On information and belief, Aqua ChemPac, Simoniz, Floor Mechanics, NAS, and Mr. Seneca have had actual knowledge of the '319 Patent and induced infringement for many of the same reasons that they acted willfully as described below because they intended that others infringe the '319 Patent and at least acted willfully blind by disregarding the '319 Patent.

87.     On information and belief, Aqua ChemPac has infringed and is infringing at least claims 1, 6, and 7 of the '319 Patent under 35 U.S.C. § 271(f) by exporting from the United States, including without limitation, Aqua ChemPac Heavy Duty Multipurpose Cleaner; Carpet & Fabric Stain Remover; Auto-Scrub Floor Cleaner; Neutral Floor Cleaner; Heavy-Duty Floor Cleaner; Floor Conditioner & Neutralizer; Sanitary Restroom Cleaner & Deodorizer; Citrus All–

Purpose Cleaner; Carpet Extraction Cleaner; Traffic Lane Cleaner; Carpet Stain Remover; Glass And Hard Surface Cleaner; Non-Acid Bathroom Cleaner; Non-Acid Bathroom and Bowl Cleaner; Laundry Detergent (non Laundry Product Field); and Odor Eliminator And Freshener, each of which is encompassed by at least claims 1, 6, and 7 of the '319 Patent. Based on Aqua ChemPac's knowledge of B3P's '319 patent and its disregard of the '319 Patent, Aqua ChemPac has induced others to infringe, as it was at the very least willfully blind to the '319 Patent.

88.     On information and belief, Aqua ChemPac has known of the '319 Patent since at least 2010 including at least claims 1, 6, 7, 15 and 20-22 of the '319 Patent. For example, Mr. Seneca, one of the founders of Aqua ChemPac, was a former Dickler Chemical and/or Pak-It LLC employee and was aware of and had knowledge of the '319 patent.

89.     On information and belief, Simoniz has known of the '319 Patent since at least 2011 because at an owner of Simoniz also is an owner of Aqua ChemPac and is involved in both businesses.

90.     On information and belief, Floor Mechanics has known of the '319 Patent since at least 2011 because at least some employees of Floor Mechanics were previously involved with Mr. Seneca and/or Dickler Chemical.

91.     On information and belief, NAS has known of the '319 Patent for years because Mr. Seneca is the owner, founder, director, and an employee of NAS.

92.     On information and belief, Aqua ChemPac, Simoniz, Floor Mechanics, NAS, and Mr. Seneca have been and are intentionally and willfully infringing at least claims 1, 6, 7, 15 and 20-22 of the '319 Patent, and this case is exceptional under 35 U.S.C. § 285. On information and belief, Aqua ChemPac, Simoniz, Floor Mechanics, NAS, and Mr. Seneca have acted despite an objectively high likelihood that their actions constituted infringement of the '319 Patent. Steve

Seneca, co-founder of Aqua ChemPac, was formerly president of Pak-It LLC and employed by Dickler and knew of the '319 patent prior to the formation of Aqua ChemPac. Aqua ChemPac has been aware of the '319 Patent since at least the formation of Aqua ChemPac in 2010, and Simoniz became aware of the '319 Patent when one of its owners became an owner of Aqua ChemPac and involved in Aqua ChemPac's business. NAS has been aware of the '319 Patent as long as Mr. Seneca has been aware of it. Aqua ChemPac, Simoniz, Floor Mechanics, NAS, and Mr. Seneca willfully disregarded the '319 Patent and produced their own infringing water-soluble products using the technology claimed in the '319 Patent. In fact, Aqua ChemPac copied Dickler's, now B3P's, product line and business, and Simoniz and Floor Mechanics market and sell that product line. Mr. Seneca operates www.cleanpackit.com and www.pakit.com web sites to offer for sale or sell or cause Aqua ChemPac to sell infringing products. The objective risk of infringement under these facts is extremely high.

93.     On information and belief, Aqua ChemPac, Simoniz, Floor Mechanics, NAS, and Mr. Seneca either knew that they were infringing the '319 Patent or the risk of infringing the '319 Patent was so high that Aqua ChemPac, Simoniz, Floor Mechanics, NAS, and Mr. Seneca should have known the '319 Patent was being infringed. Aqua ChemPac is co-founded by the former president of Pak-It LLC, whose wholly-owned subsidiary Dickler Chemical formerly made use of the '319 Patent. Mr. Seneca, before co-founding Aqua ChemPac, marketed and sold water-soluble cleaning packs made under the '319 Patent for Dickler Chemical. Mr. Seneca and Aqua ChemPac copied B3P's product line with full knowledge of the '319 Patent. Simoniz was aware of these facts because one of its owners is also an owner of Aqua ChemPac and involved in both businesses. Floor Mechanics was aware of these facts because some if its employees were involved with Mr. Seneca and/or Dickler Chemical. Aqua ChemPac, Floor Mechanics, NAS,

Simoniz, and Mr. Seneca were aware of the '319 patent and at least claims 1, 6, 7, 15 and 20-22 of the '319 Patent during the time Aqua ChemPac, Simoniz, Floor Mechanics, NAS, and Mr. Seneca committed the infringing acts. Mr. Seneca operates the www.cleanpackit.com and www.pakit.com web sites to offer for sale or sell or cause Aqua ChemPac to sell infringing products. The objective risk of infringement under these facts is extremely high. Aqua ChemPac, Floor Mechanics, Mr. Seneca, NAS, and Simoniz either knew that they were infringing the '319 Patent or the risk of infringing the '319 Patent was so high that they should have known they were infringing the '319 Patent.

94.     Aqua ChemPac's, Simoniz's, Floor Mechanics's, NAS's, and Mr. Seneca's infringing acts have been the actual and proximate cause of damage to B3P. B3P has sustained substantial damages and will continue to sustain monetary damages as a result of Aqua ChemPac's, Simoniz's, Floor Mechanics's, NAS's and Mr. Seneca's infringement of the '319 Patent. Aqua ChemPac, Simoniz, Floor Mechanics, NAS, and Mr. Seneca are using the '319 Patent's technology without authorization causing B3P to suffer lost profits damages. Alternatively and/or additionally, Aqua ChemPac's, Simoniz's, Floor Mechanics's, NAS's and Mr. Seneca's unauthorized use of the '319 patent has caused at least damages to B3P measured according to a reasonable royalty.

95.     B3P has no adequate remedy at law and Aqua ChemPac, Simoniz, Floor Mechanics, NAS, and Mr. Seneca should be enjoined from infringing the '319 Patent. Aqua ChemPac, Simoniz, Floor Mechanics, NAS, and Mr. Seneca have caused B3P irreparable harm. Unless enjoined, Aqua ChemPac, Floor Mechanics, Simoniz, NAS, and Mr. Seneca will continue to cause B3P irreparable harm, loss, and injury.

96.     Alternatively, on information and belief, Aqua ChemPac, NAS, and Mr. Seneca are jointly severally liable for the infringing acts of NAS.

97.     Alternatively, on information and belief, Aqua ChemPac and Mr. Seneca are jointly severally liable for the infringing acts of Mr. Seneca.

**COUNT II – AQUA CHEMPAC'S, MR. SENECA'S, FLOOR MECAHNCS'S, AND NAS'S INFRINGEMENT OF THE PAK-IT® TRADEMARK (15 U.S.C. § 1114)**

98.     The allegations of paragraphs 1 through 97 are incorporated by reference as though fully set forth herein.

99.     This cause of action arises under the Lanham Act including, *inter alia*, 15 U.S.C. § 1114.

100.     B3P's federally registered PAK-IT® trademark as shown in Exhibit B is valid, subsisting, enforceable, incontestable, and not canceled, revoked, or abandoned and evidences B3P's exclusive rights to use the PAK-IT® trademark in connection with, *inter alia*, water-soluble cleaning packets and all purpose cleaning products for, *inter alia*, floor maintenance, carpet care, road surfaces, food service, disinfecting and deodorizing, rest room care, and dishwashing.

101.     Aqua ChemPac's, Floor Mechanics's, Mr. Seneca's, and NAS's use of the PAK-IT® mark in connection with water-soluble cleaning packets, including at least Aqua ChemPac's Glass and Hard Surface Cleaner; Citrus All Purpose Cleaner; Non-Acid Bathroom & Bowl Cleaner and Neutral Floor Cleaner, as well as in connection with Aqua ChemPac's promotion, offering and sale of the same, is an infringement of Dickler Chemical's and now B3P's PAK-IT® mark, all in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114.

102.     Aqua ChemPac's and Floor Mechanic's use of Dickler Chemical and now B3P's PAK-IT® mark, and/or a reproduction, copy, colorable imitation, or a confusingly similar mark to offer for sale and to sell Aqua ChemPac's water soluble cleaning packets has caused and is likely to cause confusion, mistake, and/or deception as to whether Aqua ChemPac's products have been approved by, affiliated by, sponsored by, and/or authorized by Dickler Chemical and B3P.

103.     Aqua ChemPac's, Mr. Seneca's, and NAS's use of the www.pakit.com domain address is a reproduction, copy, colorable imitation, or confusingly similar mark to Dickler Chemical's and now B3P's PAK-IT® mark, and Aqua ChemPac's, Mr. Seneca's, and NAS's use of the

www.pakit.com domain address has likely caused confusion, mistake, and/or deceived customers into believing that Aqua ChemPac's products have been approved by, affiliated by, sponsored by, and/or authorized by Dickler Chemical and B3P.

104.    Aqua ChemPac's, Mr. Seneca's, and NAS's use of the www.cleanpackit.com domain address is a colorable imitation or confusingly similar mark to Dickler Chemical's and now B3P's PAK-IT® mark, and Aqua ChemPac's, Mr. Seneca's, and NAS's use of the www.cleanpackit.com domain address has likely caused confusion, mistake, and/or deceived customers into believing that Aqua ChemPac's products have been approved by, affiliated by, sponsored by, and/or authorized by Dickler Chemical and B3P.

105.    Aqua ChemPac's, Mr. Seneca's, Floor Mechanics's, and NAS's use of the B3P's PAK-IT® mark as described above has caused Dickler Chemical and B3P damages and B3P is entitled to recover damages, costs, and attorney fees, as provided in 15 U.S.C. § 1117.

106.    B3P has no control over the quality of goods which are provided, promoted, advertised and sold by Aqua ChemPac, Floor Mechanics, Mr. Seneca, and NAS with the result that B3P's valuable goodwill with respect to its PAK-IT® trademark may be irreparably injured by the acts of Aqua ChemPac complained of herein.

107.    Aqua ChemPac, Mr. Seneca, and NAS have been and are aware of and had knowledgeable of, or should have been aware of, the incontestable federally registered PAK-IT® trademark. Despite this, Aqua ChemPac, Mr. Seneca, and NAS have willfully infringed the PAK-IT® trademark.

108.    As a result of the trademark infringement, B3P has suffered and continues to suffer irreparable injury, for which it has no adequate remedy at law, and the infringing uses of B3P's PAK-IT® trademark should be enjoined preliminarily and permanently.

109.    On information and belief, Mr. Seneca is personally liable for the acts of NAS as corporate form has been disregarded, NAS has no real business, and is a sham company, and Mr. Seneca has improperly used NAS in an attempt to shield himself from liability.

110.    On information and belief, Aqua ChemPac is liable for the acts of Mr. Seneca and NAS as corporate form has been disregarded, NAS has no real business, and is a sham company, Mr. Seneca has improperly used NAS in an attempt to shield himself from liability, and Mr. Seneca and NAS have acted as the representative, agent, and/or at the direction and behalf of Aqua ChemPac.

111.    Alternatively, on information and belief, Aqua ChemPac, NAS, and Mr. Seneca are jointly severally liable for the infringing acts of NAS.

112.    Alternatively, on information and belief, Aqua ChemPac and Mr. Seneca are jointly severally liable for the infringing acts of Mr. Seneca.

**COUNT III – AQUA CHEMPAC'S, MR. SENECA'S, FLOOR MECAHNCS'S,
AND NAS'S UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
15 U.S.C. § 1125(a)**

113.    B3P repeats the allegations in paragraphs 1-112 of this Complaint as if fully set forth
herein.

114.    This cause of action arises under the Lanham Act including, *inter alia*, 15 U.S.C.
§ 1125(a).

115.    Dickler Chemical's, B3P's, and Aqua ChemPac's water-soluble cleaning packets are
similar in that they both involve water-soluble cleaning solutions for the same or similar
applications.

116.    Aqua ChemPac's and Floor Mechanics's use of Dickler Chemical's and now B3P's
PAK-IT® mark, and/or a reproduction, copy, colorable imitation, or a confusingly similar mark
to offer for sale and to sell Aqua ChemPac's water soluble cleaning packets is a false designate
of the origin of Aqua ChemPac's water-soluble packets and a false description and misleading
representation of the origin of Aqua ChemPac's water soluble packets that has caused and is
likely to cause confusion, or mistake, or to deceive as to the affiliation, connection, or
association, of Aqua ChemPac's products with Dickler Chemical and now B3P, or as to the
origin, sponsorship, or approval of Aqua ChemPac's water-soluble by Dickler Chemical and now
B3P, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. 1125(a).

117.    Aqua ChemPac's, Mr. Seneca's, and NAS's use of the www.pakit.com domain address is
a reproduction, copy, colorable imitation, or confusingly similar mark to Dickler Chemical's and
now B3P's PAK-IT® mark, and Aqua ChemPac's, Mr. Seneca's, and NAS's use of the
www.pakit.com domain address is a false and misleading designate of the origin of Aqua
ChemPac's water-soluble products that has caused and is likely to cause confusion, or mistake,
or to deceive as to the affiliation, connection, or association, of Aqua ChemPac's products with

Dickler Chemical and B3P, or as to the origin, sponsorship, or approval of Aqua ChemPac's water-soluble by Dickler Chemical and B3P, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. 1125(a).

118.    Aqua ChemPac's, Mr. Seneca's, and NAS's use of the www.cleanpackit.com domain address is a colorable imitation or confusingly similar mark to Dickler Chemical's and now B3P's PAK-IT® mark, and Aqua ChemPac's, Mr. Seneca's, and NAS's use of the www.cleanpackit.com domain address is a false and misleading designation of the origin of Aqua ChemPac water-soluble packets that has caused and is likely to cause confusion, or mistake, or to deceive as to the affiliation, connection, or association, of Aqua ChemPac's products with Dickler Chemical and now B3P, or as to the origin, sponsorship, or approval of Aqua ChemPac's water-soluble by Dickler Chemical and B3P, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. 1125(a).

119.    The use by Aqua ChemPac of a colorable imitation of B3P's PAK- IT® trademark in connection with its water-soluble pack to advertise and promote Aqua ChemPac's water-soluble packs, constitutes unfair competition, a false description and representation and a false designation of the origin of Aqua ChemPac's water-soluble packs, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. 1125(a).

120.    Aqua ChemPac's use of an identical or colorable imitation of B3P's PAK- IT® trademark in connection with Aqua ChemPac's water-soluble packets is a false designate of the origin of Aqua ChemPac water-soluble products and a false description and misleading representation of the origin of Aqua ChemPac's water soluble packets in commercial advertising or promotion of Aqua ChemPac's water soluble packets, misrepresents the nature, characteristics, qualities, and

origin of Aqua ChemPac's water soluble packets, services, and commercial activities as being associated with B3P.

121.   By virtue of at least Mr. Seneca's prior employment at PAK-IT and association with Dickler Chemical and JBI, Aqua ChemPac, Mr. Seneca, and NAS knew that the PAK-IT® trademark did not belong to Aqua ChemPac.  Aqua ChemPac, Mr. Seneca, and NAS willfully intended to trade on the recognition of B3P's PAK-IT® trademark and/or harm the reputation of B3P's PAK-IT® trademark.  Mr. Seneca established Aqua ChemPac and NAS with an identical competing business and knowingly used B3P's PAK-IT® to divert customers from Dickler Chemical and B3P to Aqua ChemPac.

122.   Aqua ChemPac's, Mr. Seneca's, Floor Mechanics's, and NAS's use of the B3P's PAK-IT® mark as described above has caused Dickler Chemical and B3P damages and B3P is entitled to recover damages, costs, and attorney fees, as provided in 15 U.S.C. § 1117, as B3P and Dickler Chemical have lost sales because of these uses, as well as harm to reputation and goodwill.

123.   B3P has no control over the quality of Aqua ChemPac's sold, rendered, promoted, and advertised products and services, such that B3P's goodwill with respect to B3P's PAK- IT® trademark is irreparably injured by Aqua ChemPac's acts complained of herein.

124.   Upon information and belief, Aqua ChemPac will continue its infringing acts unless restrained by this Court.  As a result of this unfair competition and false designation of origin, B3P has suffered and continues to suffer irreparable injury, for which it has no adequate remedy at law.

125.    On information and belief, Mr. Seneca is personally liable for the acts of NAS as corporate form has been disregarded, NAS has no real business, and is a sham company, and Mr. Seneca has improperly used NAS in attempt to shield himself from liability.

126.    On information and belief, Aqua ChemPac is liable for the acts of Mr. Seneca and NAS as corporate form has been disregarded, NAS has no real business, and is a sham company, Mr. Seneca has improperly used NAS in attempt to shield himself from liability, and Mr. Seneca and NAS have acted as the representative, agent, and/or on at the direction and behalf of Aqua ChemPac.

127.    Alternatively, on information and belief, Aqua ChemPac, NAS, and Mr. Seneca are jointly severally liable for the infringing acts of NAS.

128.    Alternatively, on information and belief, Aqua ChemPac and Mr. Seneca are jointly severally liable for the infringing acts of Mr. Seneca.

**COUNT IV – AQUA CHEMPAC'S, MR. SENECA'S, FLOOR MECAHNCS'S,
AND NAS'S DILUTION OF B3P'S MARKS
(15 U.S.C. § 1125(c))**

129.    B3P repeats the allegations in paragraphs 1-128 of this Complaint as if fully set forth herein.

130.    This cause of action arises under the Lanham Act including, *inter alia*, 15 U.S.C. § 1125(c).

131.    B3P's PAK- IT® trademark is a famous mark that is widely recognized by the consuming public as the designation of Dickler Chemical and now B3P as the source of water-soluble cleaning packets.

132.    Aqua ChemPac, Floor Mechanics, Mr. Seneca, and NAS first used the identical or colorable imitation of B3P's PAK-IT® trademark in commerce after the date of enactment of the Trademark Dilution Revision Act of 2006.

133.    Aqua ChemPac's, Floor Mechanics, Mr. Seneca's, and NAS'S use of the identical or colorable imitation of B3P's PAK-IT® trademark in commerce in connection with Aqua ChemPac's water soluble cleaning packets after B3P's PAK-IT® trademark became famous has caused and is likely to continue to cause dilution by blurring that arises from the similarity between B3P's PAK-IT® trademark and Aqua ChemPac's, Floor Mechanics, Mr. Seneca's, and NAS'S use of the identical or colorable imitation of B3P's PAK-IT® trademark and that impairs the distinctiveness of B3P's PAK-IT® trademark.

134.    Aqua ChemPac's, Floor Mechanics, Mr. Seneca's, and NAS'S use of the identical or colorable imitation of B3P's PAK-IT® trademark in commerce in connection with Aqua ChemPac's water soluble cleaning packets after B3P's PAK-IT® trademark became famous has caused and is likely to continue to cause dilution by tarnishment that arises from the similarity between B3P's PAK-IT® trademark and Aqua ChemPac's, Floor Mechanics, Mr. Seneca's, and

NAS'S use of the identical or colorable imitation of B3P's PAK-IT® trademark and that harms the reputation and goodwill of B3P's PAK-IT® trademark because B3P has no control over the quality of Aqua ChemPac's water-soluble cleaning packets.

135.   By virtue of at least Mr. Seneca's prior employment at PAK-IT and association with Dickler Chemical and JBI, Aqua ChemPac, NAS, Mr. Seneca, and Floor Mechanics knew that the PAK-IT® trademark did not belong to them.   Aqua ChemPac, NAS, Mr. Seneca, and Floor Mechanics willfully intended to trade on the recognition of B3P's PAK-IT® trademark and/or harm the reputation of B3P's PAK-IT® trademark.   Seneca established Aqua ChemPac with an identical competing business and knowingly used B3P's PAK-IT® to divert customers from Dickler Chemical and B3P and to Aqua ChemPac.

136.   Upon information and belief, Aqua ChemPac, Floor Mechanics, Mr. Seneca, and NAS will continue their infringing acts unless restrained by this Court.   As a result of this unfair competition and false designation of origin, Dickler Chemical and B3P have suffered and B3P continues to suffer irreparable injury, for which it has no adequate remedy at law.

137.   Based on Aqua ChemPac's willful violation of B3P's trademark rights, B3P is entitled to recover Aqua ChemPac's profits, BSP's lost profits for lost sales, damage to B3P's reputation and goodwill, the costs of this action, and attorney fees, as well as enhanced damages under 15 U.S.C. § 1117.

138.   On information and belief, Mr. Seneca is personally liable for the acts of NAS as corporate form has been disregarded, NAS has no real business, and is a sham company, and Mr. Seneca has improperly used NAS in attempt to shield himself from liability.

139.   On information and belief, Aqua ChemPac is liable for the acts of Mr. Seneca and NAS as corporate form has been disregarded, NAS has no real business, and is a sham company, Mr.

Seneca has improperly used NAS in attempt to shield himself from liability, and Mr. Seneca and NAS have acted as the representative, agent, and/or on at the direction and behalf of Aqua ChemPac.

140.    Alternatively, on information and belief, Aqua ChemPac, NAS, and Mr. Seneca are jointly severally liable for the infringing acts of NAS.

141.    Alternatively, on information and belief, Aqua ChemPac and Mr. Seneca are jointly severally liable for the infringing acts of Mr. Seneca.

## COUNT V – AQUA CHEMPAC'S, MR. SENECA'S, AND NAS'S CYBERSQUATTING (15 U.S.C. §1125(d))

142.    B3P repeats the allegations in paragraphs 1-141 of this Complaint as if fully set forth herein.

143.    This cause of action arises under the Lanham Act including, *inter alia*, 15 U.S.C. §1125(d).

144.    NAS, on behalf of, Mr. Seneca registered the domain name www.pakit.com.

145.    On information and belief, Aqua ChemPac and Mr. Seneca directed and caused NAS, which acted on behalf of and as the agent of Aqua ChemPac and/or Mr. Seneca to use the www.pakit.com web site to redirect customers to www.cleanpackit.com.

146.    Aqua ChemPac is an authorized licensee of the www.pakit.com domain name as evidenced by NAS, Mr. Seneca, and Aqua ChemPac directing users of the www.pakit.com domain name to Aqua ChemPac to purchase Aqua ChemPac products.

147.    Mr. Seneca, NAS, and Aqua ChemPac registered, trafficed in, and used B3P's PAK-IT® trademark and had a bad faith intent to profit from B3P's PAK-IT® trademark, as evidenced by, *inter alia*, their use of the confusingly similar mark "pakit" in the domain name to direct customers to Aqua ChemPac and thereby profit from the use of B3P's  trademark and the fact that Mr. Seneca, NAS, and Aqua ChemPac knew that they did not own the PAK-IT® trademark, and were using the domain name to improperly direct Dickler Chemical and now B3P customers to Aqua ChemPac.

148.    B3P's PAK-IT® trademark was distinctive at the time of the registration of the www.pakit.com domain name, and the domain name, is confusingly similar to B3P's PAK-IT® trademark and/or B3P's PAK-IT® trademark was famous at the time of registration of the

www.pakit.com domain name, and the domain name is confusingly similar to or dilutive of B3P's PAK-IT® trademark, for the same reasons as those described above.

149.    B3P requests that ownership of the www.pakit.com domain name be transferred to B3P or in the alternative the www.pakit.com domain name be forfeited or canceled.

150.    Mr. Seneca and Aqua ChemPac registered, trafficed in, and used B3P's PAK-IT® trademark and had a bad faith intent to profit from B3P's PAK-IT® trademark, as evidenced by, *inter alia*, the their use of the confusingly similar mark "pakit" in the domain name www.cleanpackit.com to offer for sale and sell Aqua ChemPac products and thereby profit from the use of Dickler Chemical's and now B3P's  trademark and the fact that Mr. Seneca and Aqua ChemPac knew that they did not own the PAK-IT® trademark, and were using the domain name to improperly direct Dickler Chemical and now B3P customers to Aqua ChemPac.

151.    B3P's PAK-IT® trademark was distinctive at the time of the registration of the www.cleanpackit.com domain name, and the domain name, is confusingly similar to B3P's PAK-IT® trademark and/or B3P's PAK-IT® trademark was famous at the time of registration of the www.cleanpackit.com domain name, and the domain name is confusingly similar to or dilutive of B3P's PAK-IT® trademark, for the same reasons as those described above.

152.    By virtue of at least Mr. Seneca's prior employment at Pak-It LLC and association with Dickler Chemical and JBI, Aqua ChemPac knew that the PAK-IT® trademark did not belong to Mr. Seneca, NAS, and Aqua ChemPac.  Mr. Seneca, NAS, and Aqua ChemPac willfully intended to trade on the recognition of B3P's PAK-IT® trademark and/or harm the reputation of B3P's PAK-IT® trademark.  Mr. Seneca established Aqua ChemPac with an identical competing business and Mr. Seneca, Aqua ChemPac, and B3P knowingly used B3P's PAK-IT® mark to divert customers from Dickler Chemical and B3P and to Aqua ChemPac.

153.     Upon information and belief, Aqua ChemPac, Floor Mechanics, Mr. Seneca, and NAS will continue their infringing acts unless restrained by this Court.  As a result of this unfair competition and false designation of origin, Dickler Chemical and B3P have suffered and B3P continues to suffer irreparable injury, for which it has no adequate remedy at law, their use of B3P's mark should be enjoined, and ownership of the www.pak-it.com and www.cleanpackit.com domain names should be transferred to B3P ad/or forfeited.

154.     Based on Aqua ChemPac's willful violation of B3P's trademark rights, B3P is entitled to recover Aqua ChemPac's profits, B3P's lost profits for lost sales, damage to B3P's reputation and goodwill, the costs of this action, and attorney fees, as well as enhanced damages under 15 U.S.C. § 1117.

155.     On information and belief, Mr. Seneca is personally liable for the acts of NAS as corporate form has been disregarded, NAS has no real business, and is a sham company, and Mr. Seneca has improperly used NAS in attempt to shield himself from liability.

156.     On information and belief, Aqua ChemPac is liable for the acts of Mr. Seneca and NAS as corporate form has been disregarded, NAS has no real business, and is a sham company, Mr. Seneca has improperly used NAS in attempt to shield himself from liability, and Mr. Seneca and NAS have acted as the representative, agent, and/or on at the direction and behalf of Aqua ChemPac.

157.     Alternatively, on information and belief, Aqua ChemPac, NAS, and Mr. Seneca are jointly severally liable for the infringing acts of NAS.

158.     Alternatively, on information and belief, Aqua ChemPac and Mr. Seneca are jointly severally liable for the infringing acts of Mr. Seneca.

## COUNT VI – AQUA CHEMPAC'S, MR. SENECA'S, NAS'S, AND FLOOR MECHANICS'S STATE TRADEMARK INFRINGEMENT

159.    B3P repeats the allegations in paragraphs 1-158 of this Complaint as if fully set forth herein.

160.    This cause of action arises under the common and statutory laws of the Commonwealth of Pennsylvania.

161.    B3P owns legal title to the "PAK-IT" trademark including Pennsylvania common and state law rights in the mark.

162.    Aqua ChemPac's, NAS's, Mr. Seneca's, and Floor Mechanics's aforementioned conduct in using an identical copy, reproduction, substantially indistinguishable from, or confusingly or deceptively similar mark to the "PAK-IT" trademark in advertising and/or web site domain names constitutes common law trademark infringement.

163.    Aqua ChemPac's, NAS's, Mr. Seneca's, and Floor Mechanics's aforementioned conduct has caused, and is likely to continue to cause confusion, mistake, and deception among consumers, the public, and the trade as to whether Aqua ChemPac's products originate from, or are affiliated with, sponsored by, or endorsed by Dickler Chemical and B3P.

164.    Aqua ChemPac, NAS, Mr. Seneca, and Floor Mechanics have acted with knowledge of Dickler Chemical's and B3P's ownership of the "PAK-IT" mark and with the deliberate intention or willful blindness to unfairly benefit from the goodwill symbolized by the mark.

165.    Aqua ChemPac's, NAS's, Mr. Seneca's, and Floor Mechanics's aforementioned conduct constitutes trademark infringement in violation of the common law of the Commonwealth of Pennsylvania.

166.    As result of the infringement, B3P has suffered and continues to suffer serious and substantial injury, including monetary injury, lost sales, loss of good will, irreparable injury, for

45

which it has no adequate remedy at law, and Aqua ChemPac, NAS, Mr. Seneca, and Floor Mechanics should be enjoined from the infringing uses.

167.   Alternatively, on information and belief, Aqua ChemPac, NAS, and Mr. Seneca are jointly severally liable for the infringing acts of NAS.

168.   Alternatively, on information and belief, Aqua ChemPac and Mr. Seneca are jointly severally liable for the infringing acts of Mr. Seneca.

## COUNT VII – AQUA CHEMPAC'S, MR. SENECA'S, NAS'S, AND FLOOR MECHANCICS'S COMMON LAW UNFAIR COMPETITION

169.    B3P repeats the allegations in paragraphs 1-168 of this Complaint as if fully set forth herein.

170.    This cause of action arises under the common and statutory laws of the Commonwealth of Pennsylvania.

171.    B3P owns legal title to the PAK-IT® trademark including Pennsylvania common and state law rights in the mark.

172.    Aqua ChemPac's, NAS's, Mr. Seneca's, and Floor Mechanics's aforementioned conduct of using an identical copy, reproduction, substantially indistinguishable from, or confusingly or deceptively similar mark to the PAK-IT® trademark in advertizing and/or web site domain names constitutes unlawful competition and unfair trade practices in that Aqua ChemPac, NAS, Mr. Seneca, and Floor Mechanics are attempting to and are misrepresenting, passing off, and/or misleading the consuming public and trade as to the nature of Aqua ChemPac's good and services as being those of Dickler Chemical and/or B3P, and otherwise attempts to misappropriate and capitalize upon the good will in the PAK-IT® mark.

173.    Aqua ChemPac's aforementioned conduct constitutes unfair competition.

174.    Aqua ChemPac's, NAS's, Mr. Seneca's, and Floor Mechanics's aforementioned conduct has caused, and is likely to continue to cause confusion, mistake, and deception among consumers, the public, and the trade as to whether Aqua ChemPac's products originate from, or are affiliated with, sponsored by, or endorsed by Dickler Chemical and B3P and passing off of Aqua Chem's products as Dickler Chemical's and now B3P's products.

175.    Aqua ChemPac, NAS, Mr. Seneca, and Floor Mechanics have acted with knowledge of Dickler Chemical's and B3P's ownership of the PAK-IT® mark and with the deliberate intention or willful blindness to unfairly benefit from the goodwill symbolized by the mark.

176.    As result of the infringement, B3P has suffered and continues to suffer serious and substantial injury, including monetary injury, lost sales, loss of good will, irreparable injury, for which it has no adequate remedy at law, and Aqua ChemPac, NAS, Mr. Seneca, and Floor Mechanics should be enjoined from the infringing uses.

177.    Alternatively, on information and belief, Aqua ChemPac, NAS, and Mr. Seneca are jointly severally liable for the infringing acts of NAS.

178.    Alternatively, on information and belief, Aqua ChemPac and Mr. Seneca are jointly severally liable for the infringing acts of Mr. Seneca.

**COUNT VIII – AQUA CHEMPAC'S, MR. SENECA'S, NAS'S, AND FLOOR MECHANCICS'S UNJUST ENRICHMENT**

179.    B3P repeats the allegations in paragraphs 1-178 of this Complaint as if fully set forth herein.

180.    This cause of action arises under the common and statutory laws of the Commonwealth of Pennsylvania.

181.    Aqua ChemPac's, NAS's, Mr. Seneca's, and Floor Mechanics's aforementioned conduct of misappropriating B3P's PAK-IT® mark constitutes trademark infringement, unlawful competition, and unfair trade practices in that Aqua ChemPac, NAS, Mr. Seneca, and Floor Mechanics are attempting to and are misrepresenting, passing off, and/or misleading the consuming public and trade as to the nature of Aqua ChemPac's good and services as being those of Dickler Chemical and/or B3P, and otherwise attempts to misappropriate and capitalize upon the good will in the PAK-IT® mark.

182.    Aqua ChemPac's aforementioned use of B3P's PAK-IT® trademark and technology has unjustly taken business from B3P by permitting Aqua ChemPac to confuse and mislead customers to believe Aqua ChemPac was associated with and continued to be associated with the incontestable trademark PAK-IT®. Aqua ChemPac's activities enriched Aqua ChemPac at the expense of B3P.

183.    The acts complained of herein constitute unjust enrichment.

184.    As a direct and proximate cause of Aqua ChemPac's, NAS's, Mr. Seneca's, and Floor Mechanics's aforementioned conduct, Dicker Chemical and B3P have suffered and B3P continues to suffer irreparable injury and as a result of their conduct loss of profits, and goodwill, and will continue unless enjoined.

49

185.    Alternatively, on information and belief, Aqua ChemPac, NAS, and Mr. Seneca are jointly severally liable for the infringing acts of NAS.

186.    Alternatively, on information and belief, Aqua ChemPac and Mr. Seneca are jointly severally liable for the infringing acts of Mr. Seneca.

## COUNT IX – AQUA CHEMPAC'S, MR. SENECA'S, NAS'S, AND FLOOR MECHANCICS'S STATUTORY AND COMMON LAW DILUTION: INJURY TO BUSINESS REPUTATION

187. B3P repeats the allegations in paragraphs 1-186 of this Complaint as if fully set forth herein.

188. This cause of action arises under the common law and the Pennsylvania state anti-dilution statute, 54 Pa. C.S.A. § 1124.

189. B3P's PAK-IT® trademark has become and is famous in the minds of the relevant trade and public in the City of Philadelphia and throughout the Commonwealth of Pennsylvania.

190. B3P's PAK-IT® trademark has acquired distinctiveness and fame, through its long history of use and promotional efforts within the cleaning product field.

191. Aqua ChemPac's, Mr. Seneca's, NAS's, and Floor Mechanics' imitation of the PAK-IT® trademark began after the mark had become famous in the cleaning product field.

192. Aqua ChemPac, Mr. Seneca, NAS, and Floor Mechanics by their wrongful imitation and use of the B3P's PAK-IT® trademark has wrongfully implied an affiliation between Dickler Chemical and B3P on the one hand and Aqua ChemPac on the other.

193. Aqua ChemPac's, Mr. Seneca's, NAS's, and Floor Mechanics' wrongful use of B3P's PAK-IT® trademark was willfully and intentionally designed to trade upon B3P's acquired and continuing goodwill and business reputation and to injure and dilute the distinctive quality of Plaintiff's mark in violation of 54 Pa. C.S.A. § 1124 and B3P should be awarded monetary damages under 54 Pa. C.S.A. § 1124.

194. By the acts complained of herein, Aqua ChemPac, Mr. Seneca, NAS, and Floor Mechanics has lessened the capacity of B3P's PAK-IT® trademark to identify and distinguish B3P's water-soluble cleaning packs.

195. By means and as a result of said dilution, B3P has suffered and continues to suffer serious and substantial injury, including irreparable injury for which Plaintiff has no adequate remedy at law, and Aqua ChemPac, Mr. Seneca, NAS, and Floor Mechanics should be enjoined from use of B3P's mark.

196. Alternatively, on information and belief, Aqua ChemPac, NAS, and Mr. Seneca are jointly severally liable for the infringing acts of NAS.

197. Alternatively, on information and belief, Aqua ChemPac and Mr. Seneca are jointly severally liable for the infringing acts of Mr. Seneca.


### JURY DEMAND

Plaintiff B3P demands a trial by jury.

### PRAYER FOR RELIEF

Wherefore, B3P requests that the Court enter judgment:

A.     permanently enjoining Aqua ChemPac, Simoniz, Mr. Seneca, NAS, and Floor Mechanics those in active concert with them, from further infringement of the '319 Patent;

B.     declaring that Aqua ChemPac, Simoniz, Mr. Seneca, and Floor Mechanics have directly infringed and are directly infringing at least claims 1, 6, and 7 of the '319 Patent;

C.     declaring that Aqua ChemPac, Simoniz, Mr. Seneca, NAS, and Floor Mechanics have indirectly infringed and are indirectly infringing claims 1, 6, 7, 15, and 20-22 of the '319 Patent;

D.     awarding B3P and damages adequate to compensate B3P for Aqua ChemPac's, Simoniz's, Mr. Seneca's, NAS's, and Floor Mechanics's direct and indirect infringement, but in no event less than a reasonable royalty for their use of the patented invention, together with

prejudgment and post-judgment interest and costs, as fixed by the Court and as provided by 35 U.S.C. § 284;

     E.     declaring that Aqua ChemPac's, Simoniz's, Mr. Seneca's, NAS's, and Floor Mechanics's infringement was willful;

     F.     finding that, as to Aqua ChemPac's, Simoniz's, Mr. Seneca's, NAS's, and Floor Mechanics's patent infringement this is an exceptional case under 35 U.S.C. §285;

     G.     awarding treble damages against Aqua ChemPac, Simoniz, Mr. Seneca, NAS's, and Floor Mechanics for their willful infringement of the '319 patent, as provided by 35 U.S.C. § 284;

     H.     awarding B3P their attorneys' fees incurred in prosecuting this patent infringement action against Aqua ChemPac, Simoniz, Mr. Seneca, and Floor Mechanics, as provided by 35 U.S.C. § 285;

     I.     permanently enjoining Aqua ChemPac, Mr. Seneca, NAS, and Floor Mechanics and those in active concert with them from directly or indirectly infringing B3P's PAK-IT®;

     J.     preliminarily and permanently enjoining Aqua ChemPac, Mr. Seneca, Floor Mechanics, and NAS and those in active concert with them from passing off, inducing or enabling others to sell or pass off any goods provided by Aqua ChemPac as originating from B3P, which are not B3P's goods or are not rendered by or under the control or supervision of B3P and approved by B3P;

     K.     preliminarily and permanently enjoining Aqua ChemPac, Mr. Seneca, Floor Mechanics, and NAS and those in active concert with them from directly or indirectly engaging in any acts or activities calculated to trade upon and/or dilute and/or tarnish B3P's PAK-IT®

trademark, and/or the reputation or goodwill of Plaintiff, or in any manner to compete with Plaintiff unfairly;

      L.      preliminarily and permanently enjoining Aqua ChemPac, Simoniz, Mr. Seneca, Floor Mechanics, and NAS and those in active concert with them from using in the sale, offering for sale, promotion, advertising, marketing and/or distribution of its goods or services using a colorable imitation of the trademark PAK-IT®, or any mark which is a variant of, simulates, imitates, is substantially similar to, or is confusingly similar to, B3P's PAK-IT® trademark, including but not limited to, any mark which includes the use of a variation of the PAK-IT® trademark in such a manner as to deceive, or to falsely describe or represent the source of the goods or otherwise create confusion upon the purchasing public or the trade;

      M.      preliminarily and permanently enjoining Aqua ChemPac, Mr. Seneca, Floor Mechanics, and NAS and those in active concert and those in active concert with them from further violating Plaintiff's property rights and goodwill;

      N.      preliminarily and permanently enjoining Aqua ChemPac, Simoniz, Mr. Seneca, Floor Mechanics, and NAS and those in active concert with them from otherwise competing unfairly with Plaintiff in any manner whatsoever;

      O.      compelling preliminarily and permanently enjoining Aqua ChemPac, Simoniz, Mr. Seneca, Floor Mechanics, and NAS and those in active concert to take all necessary and appropriate steps to recall for destruction all advertising and other materials, including but not limited to website publications, advertising and promotions bearing the Aqua ChemPac's infringing imitation of B3P's PAK-IT® trademark or any variant, colorable imitation, simulation, copy, or counterfeit of B3P's PAK-IT® trademark and that preliminarily and permanently enjoining Aqua ChemPac, Mr. Seneca, Floor Mechanics, and NAS and those in active concert be

required to remove such infringing marks from promotional materials, advertisements and other media reproductions, in any media;

P.      ordering NAS to transfer ownership of www.pakit.com to B3P or to forfeiture ownership;

Q.      compensating B3P for all sales made resulting from the use of www.pakit.com, or via the redirection to Aqua ChemPac owned websites;

R.      ordering Mr. Seneca to transfer ownership of www.cleanpackit.com to B3P or to forfeiture ownership;

Q.      compensating B3P for all sales made resulting from the use of www.cleanpackit.com;

R.      awarding to B3P all monetary damages realized from Aqua ChemPac's, Mr. Seneca's, Floor Mechanics's, and NAS's unlawful trademark, dilution false designation of origin, unfair competition, and cybersquatting acts complained of herein;

S.      awarding to B3P all damages suffered by B3P as a result of Aqua ChemPac's, Mr. Seneca's, Floor Mechanics's, and NAS's acts herein complained of and that the damages be trebled as a result of Aqua ChemPac's willfulness;

T.      awarding B3P punitive damages for the willful and deliberate acts of unfair competition and other unlawful injurious acts of Aqua ChemPac, Mr. Seneca, Floor Mechanics, and NAS complained of herein;

V.      awarding B3P its reasonable attorney fees and the cost of this action in view of Aqua ChemPac's, Mr. Seneca's, Floor Mechanics's, and NAS's willful and deliberate violation of Plaintiff's rights; and

W.      awarding B3P such other relief as the Court deems just and proper.

_____
Michael Bonella (PA Bar No.79175)
Paul B. Milcetic  (PA Bar No.68037)
Jenna Pellecchia  (PA Bar No.309244)

KESSLER, TOPAZ, MELTZER & CHECK LLP
280 King of Prussia Road
Radnor, PA 19807
(T): 610-667-7706
(F): 610-667-7056

mbonella@ktmc.com
pmilcetic@ktmc.com
jpellecchia@ktmc.com

*Attorneys for Plaintiffs*
*Big 3 Packaging, LLC*

56

# EXHIBIT A

US006037319A

## United States Patent [19]

### Dickler et al.

[11] **Patent Number:** **6,037,319**

[45] **Date of Patent:** **Mar. 14, 2000**

[54] **WATER-SOLUBLE PACKETS CONTAINING LIQUID CLEANING CONCENTRATES**

[75] Inventors: **Lawrence R. Dickler**, Cherry Hill, N.J.; **J. Barry Ruck**, Wynnewood, Pa.

[73] Assignee: **Dickler Chemical Laboratories, Inc.**, Philadelphia, Pa.

[21] Appl. No.: **08/834,681**

[22] Filed: **Apr. 1, 1997**

[51] **Int. Cl.**[7] ............................ **C11D 17/00**; C11D 17/08; C11D 7/60; C11D 7/32

[52] **U.S. Cl.** ......................... **510/439**; 510/461; 510/409; 510/406; 510/337; 510/296

[58] **Field of Search** ..................................... 510/295, 296, 510/312, 313, 314, 315, 337, 439, 441, 406, 409, 461

[56] **References Cited**

#### U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 3,186,869 | 6/1965 | Friedman . |
| 3,277,009 | 10/1966 | Freifeld et al. . |
| 3,322,674 | 5/1967 | Friedman . |
| 3,528,921 | 9/1970 | Gray . |
| 3,784,005 | 1/1974 | McVay . |
| 3,790,067 | 2/1974 | Scheier . |
| 3,859,125 | 1/1975 | Miller et al. . |
| 3,919,678 | 11/1975 | Penfold . |
| 4,188,304 | 2/1980 | Clarke et al. . |
| 4,285,841 | 8/1981 | Barrat et al. . |
| 4,416,791 | 11/1983 | Haq . |
| 4,622,161 | 11/1986 | Cornelissens et al. . |
| 4,747,976 | 5/1988 | Yang et al. . |
| 4,820,435 | 4/1989 | Zafiroglu . |
| 4,846,992 | 7/1989 | Fonsny . |
| 4,973,416 | 11/1990 | Kennedy . |
| 5,015,513 | 5/1991 | Newbold et al. . |
| 5,035,930 | 7/1991 | Lacourse et al. . |
| 5,042,228 | 8/1991 | Pearson . |
| 5,043,196 | 8/1991 | Lacourse et al. . |
| 5,080,819 | 1/1992 | Morganson et al. ...................... 252/90 |
| 5,132,036 | 7/1992 | Falou et al. . |
| 5,158,810 | 10/1992 | Oishi et al. . |
| 5,234,615 | 8/1993 | Gladfelter et al. . |
| 5,248,038 | 9/1993 | Hodakowski et al. . |
| 5,253,759 | 10/1993 | Gouge et al. . |
| 5,280,835 | 1/1994 | Edwards et al. . |
| 5,294,361 | 3/1994 | Van den Brom . |
| 5,310,568 | 5/1994 | Lini . |
| 5,316,688 | 5/1994 | Gladfelter et al. ...................... 252/90 |
| 5,316,689 | 5/1994 | Farrell . |
| 5,328,025 | 7/1994 | Hodakowski et al. . |
| 5,330,047 | 7/1994 | Gouge et al. . |
| 5,351,831 | 10/1994 | Gouge et al. . |
| 5,389,425 | 2/1995 | Platt et al. . |

*Primary Examiner*—Paul Lieberman
*Assistant Examiner*—John M Petruncio
*Attorney, Agent, or Firm*—Caesar, Rivise, Bernstein, Cohen & Pokotilow, Ltd.

[57] **ABSTRACT**

Water-soluble packets containing liquid cleaning concentrates are provided. The packets are stable despite the presence of any minor amount of water in the cleaning concentrates. Also provided are methods of cleaning in which the packets are added to a volume of water to dissolve and form a cleaning solution, which is used to clean a material.

**48 Claims, No Drawings**

6,037,319

**1**

## WATER-SOLUBLE PACKETS CONTAINING LIQUID CLEANING CONCENTRATES

### SPECIFICATION

1. Field of the Invention

This invention relates to liquid cleaning compositions packaged within water-soluble packets.

2. Background of the Invention

Liquid cleaning compositions are often considered to be more convenient to employ than dry powered or particulate products and, therefore, have found substantial favor with consumers. They are readily measurable, speedily dissolved in water, capable of being easily applied in concentrated solutions or dispersions to soiled areas to be cleaned and are non-dusting, and they usually occupy less storage space. Furthermore, liquids are more environmentally sound since they eliminate the requirement for organic salts, including phosphates, and enable a reduction in waste volume. Additionally, the liquid cleaning compositions may have incorporated in their formulations materials which could not stand drying operations without deterioration, which materials are often desirably employed in the manufacture of particular cleaning products.

The unit packaging of cleaning compositions in sachets has already been proposed in the literature, but in practice, bulk packaging of both powdered and liquid cleaning compositions in cartons, drums, bottles and the like is generally employed. However, wastage or underdosage tends to occur when the consumer is left to judge the correct amount of a product to use. Unit packaging alleviates these problems and also avoids skin contact with the cleaning composition, so that more highly alkaline and acid compositions can be used.

Sachets for unit packaging of detergent powders are disclosed in U.S. Pat. No. 4,188,304, which discloses sachets of water-insoluble, water-permeable material, which are clearly unsuitable for the packaging of liquids, and sachets designed to open in use. The latter type of sachet requires seals that are sensitive to the wash water, and they would accordingly be unsuitable, in general, for the packaging of liquids.

U.S. Pat. No. 3,277,009 discloses packets made of water-soluble film and their use for the packaging of, inter alia, solid detergent compositions and non-aqueous liquids such as petrol and carbon tetrachloride. Such packets were clearly considered unsuitable for packaging liquids having an appreciable water content since such liquids would have been expected to attack the packet walls.

Some have proposed to solve this problem by providing the cleaning composition in the form of a paste or gel which will not dissolve the film. However, liquid cleaning compositions possess advantages over pastes and gels, including faster delivery and dispersability of the cleaning ingredients.

Others have proposed coating the internal walls of the packet with water-resistant materials, such as a waxy or oleaginous material (see, e.g., U.S. Pat. Nos. 3,186,869 and 3,322,674) or a layer of plastic (see, e.g., U.S. Pat. No. 4,416,791). Unfortunately, such packets are more difficult and expensive to produce than simple, uncoated packets.

Still others have proposed multilayered packets comprising a combination of water-soluble and water-insoluble layers. For example, U.S. Pat. No. 3,790,067 discloses a disposable container having an inner layer of water-insoluble polymeric film material and an outer layer of water-soluble polymeric material. The outer layer is relatively strong, and the inner layer is sufficiently thin to be shredded under normal atmospheric forces, or the weight of material in the container, once the outer layer has dissolved away. Again, such packages are more difficult and expensive to produce than simple, uncoated packages.

U.S. Pat. No. 4,973,416 discloses an aqueous liquid laundry detergent comprising from about 10% to about 24% by weight of water and a substantially organic neutralization system which is contained in a package, preferably a pouch or packet containing a unit dose of said liquid laundry detergent, said package comprising a water soluble film-forming material. Compatibility of the liquid laundry detergent with the water-soluble film is said to be achieved by the use of a critical water level in the liquid laundry detergent in conjunction with a substantially all organic neutralization system.

The patent also teaches the use of a solvent system which is comprised of an alkanol, for example, ethanol and/or a polyol, for example, propylene glycol, which operates in conjunction with the water in the liquid laundry detergent can be used to enhance the compatibility of the liquid laundry detergent with the water-soluble film and to ensure the isotropic nature of the liquid laundry detergent.

However, until now, it had not been considered possible to produce a stable water-soluble cleaning packet comprising an uncoated, single-layered containment system containing a liquid cleaning composition containing minor amounts of water below about 10%. In particular, chelating agents necessary to assist the detergency of detergent systems have been water-soluble, and thus unsuitable for such substantially nonaqueous compositions.

### SUMMARY OF THE INVENTION

Accordingly, the invention provides a stable water-soluble cleaning packet comprising an uncoated, single-layered containment system containing a liquid cleaning composition.

Cleaning packets according to the invention include liquid cleaning concentrates which are compatible with the water-soluble containers in which they are stored. The cleaning concentrates do not substantially degrade the containers or breach their containment therewithin, despite the presence of water in at least some cleaning concentrates according to the invention.

The cleaning packets are suitable for cleaning a variety of materials, and enable relatively safe and efficient handling of cleaning concentrates by both skilled and unskilled laborers.

The invention also provides a method for cleaning an object, comprising the use of such cleaning packets, wherein the method comprises providing a volume of water, adding said cleaning packet to said volume of water to dissolve the water-soluble container and dilute the cleaning concentrate within the container to form an aqueous cleaning composition, and applying the aqueous cleaning composition to a material to clean said material.

### DETAILED DESCRIPTION OF PREFERRED EMBODIMENTS

The container of the invention comprises a water-soluble material. For purposes of the invention, a water-soluble material is defined as a material which substantially dissolves in response to being contacted with water.

It is preferred that the water-soluble material be in the form of a film. Suitable materials for the film include polyvinyl alcohol and partially hydrolyzed polyvinyl acetate and alginates. Films of polyvinyl alcohol are most preferred.

6,037,319

3

The invention encompasses the use of materials having water-solubilities ranging from partial solubility in hot water to complete solubility in cold water. For example, in the case of a packet containing a cleaning concentrate for laundering textiles, it is sufficient that water at wash temperatures will cause enough disintegration of the film to allow release of the contents from the package into the wash water.

The thickness of the film itself should be sufficient to give it the required mechanical strength. Typically, the thickness of the film will lie within the range of from 0.5 to 10 mils. High bursting strength is also desirable. The film is also advantageously of high heat-sealability, since heat-sealing represents a convenient and inexpensive method of making packages according to the invention.

A particularly preferred film for use in the invention is Monosol® (Monosol, a Division of Chris Craft International, Gary, Ind., U.S.A.) having a thickness of about 2 to 4 mils.

The film or container is preferably uncoated to minimize production costs. Unlike certain prior art packets, the contents of the packets according to the invention are compatible with the water-soluble container, and thus, protective coatings are not necessary to provide adequate stability to the packet.

The packet of the invention is conveniently in the form of a bag or sachet. The packet may be formed from one or more sheets of a packaging film or from a tubular section of such film, but it is most conveniently formed from a single folded sheet or from two sheets, sealed together at the edge regions either by means of an adhesive or, preferably, by heat-sealing. A preferred form of the packet according to the invention is a rectangular one formed from a single folded sheet sealed on three sides, with the fourth side sealed after filling the packet with liquid cleaning composition. A rectangular-shaped packet is more easily manufactured and sealed than other configurations when using conventional packaging equipment.

The liquid cleaning composition of the invention is formulated in a manner which makes it compatible with the water-soluble film for purposes of packing, shipping, storage, and use.

It is preferred to limit the amount of water in the liquid cleaning concentrate to less than 10 wt. % of the composition. In embodiments, it is preferred to limit the amount of water to less than 7.5 wt. % or less than 5 wt. %. Contrary to the teachings of U.S. Pat. No. 4,973,416 at column 2, lines 53–61, the liquid cleaning concentrate packets according to the invention are stable despite containing cleaning concentrates having less than 10 wt. % water.

Liquid cleaning concentrates suitable for use in this invention can contain, for example, an anionic surfactant, and/or an ethoxylated nonionic surfactant, an organic neutralization system, and a solvent system comprising water and, preferably, an organic solvent and a chelating agent suitable for substantially nonaqueous environments, most preferably dimethyl glyoxime. Optional ingredients include enzymes, enzyme stabilizing agents, soil removal agents, antiredeposition agents, foam stablizers, opacifiers, antioxidants, bactericides, dyes, fragrances and brighteners. A more detailed description of optional ingredients can be found in U.S. Pat. No. 4,285,841.

To meet the constraints of the present invention which include both phase stability of the liquid cleaning concentrate and, most importantly, the surprising compatibility of the liquid cleaning concentrate with the water-soluble container, certain liquid cleaning concentrates of the invention require an organic system.

4

In embodiments, the organic system contains no more than 0.10 moles of organic amine per 100 grams of cleaning concentrate, and/or no more than 1 wt. % organic amine. The organic amine is preferably selected from the group consisting of monoethanolamine, diethanolamine, triethanolamine, and mixtures thereof. Monoethanolamine is most preferred because it enhances product stability and cleaning performance and has acceptable odor characteristics.

Other organic amines such as isopropanol amine, morphaline, etc., can be used although they are normally more expensive. Other amines can be used but preferably should have no, or minimal, odor.

Inorganic neutralizers are preferably not used in the liquid cleaning concentrates suitable for use in this invention in any substantial amount because they are generally insoluble in the concentrates. Inorganic neutralizers include, for example, sodium and potassium hydroxides.

The solvent system can comprise water which, as discussed above, is preferably present in an amount less than 10% by weight of the composition. A particularly suitable solvent system comprises ethanol and a polyol in addition to water. Ethanol is preferably present at a level of about 0.5 wt. % to about 50 wt. %. Isopropanol can be used in place of ethanol. Any polyol containing 2 to 6 carbon atoms and 2 to 6 hydroxy groups can be used. These polyols include ethylene glycol, propylene glycol, hexylene glycol and glycerine. Hexylene glycol and propylene glycol are particularly preferred.

Suitable anionic surfactants include the water-soluble salts, particularly the alkali metal salts, of sulfonated surfactants such as those disclosed in U.S. Pat. Nos. 4,285,841 and 3,919,678. These include the water soluble salts of the alkylbenzene sulfonates in which the alkyl group contains from about 8 to about 15 carbon atoms in a straight or branched chain configuration. Linear straight chain alkylbenzene sulfonates in which the average number of carbon atoms in the alkyl group is from about 11 to about 13 are particularly useful.

Cleaning compositions prepared from the cleaning concentrates according to the invention can have a broad range of pH values, for example, from about 1 to about 13. In some embodiments, the pH is 2 to 4, in other embodiments, the pH is above 8.5, and in still other embodiments, the pH is 10 to 11.

The liquid cleaning concentrate is preferably contained within a single layer film having an internal surface directly contacting said concentrate, and having an external surface which is an outermost portion of said cleaning packet.

Packets according to the invention can be used to clean a variety of materials. In embodiments, the method according to the invention comprises providing a cleaning packet comprising a liquid cleaning concentrate and a water-soluble container containing said concentrate; providing a volume of water; adding said cleaning packet to said volume of water to dissolve the water-soluble container and dilute the cleaning concentrate within the container to form an aqueous cleaning composition; and applying the aqueous cleaning composition to a material to clean said material.

Typically, the packets are formulated for a particular use; however, multipurpose cleaning packets are within the scope of the invention. Such multipurpose cleaning packets can be formulated for universal use, or for something less than universal use, such as use on non-textiles.

The invention will be illustrated in more detail with reference to the following Examples, but it should be

6,037,319

**5**

understood that the present invention is not deemed to be limited thereto. Unless otherwise stated, all parts, percentages, and ratios are by weight.

## EXAMPLE 1

Neutral Floor Cleaner

A neutral floor cleaner is prepared by mixing the following ingredients:

| | |
|---|---|
| Dimethyl monoethyl ether | 75.49% |
| Sodium lauryl sulfate | 8.00% |
| Dimethyl glyoxime | 0.50% |
| Monoethanolamine (99%) | 0.40% |
| Nonyl phenoxypolyethyleneoxy ethanols (NPX) (9.5 moles type) | 13.61% |
| Water | 2.00% |

The dimethyl monoethyl ether (hereinafter DM) is agitated prior to addition of the sodium lauryl sulfate (SLS PWD Poly Step B3, hereinafter SLS), with agitation continued until the SLS and dimethyl glyoxime are thoroughly dissolved. After combining the foregoing ingredients, 2.25 fluid ounces of fragrance (Sundance) and 0.0544 grams of uranine yellow dye are added per gallon of cleaning composition.

## EXAMPLE 2

Heavy-Duty Floor Cleaner

A heavy-duty floor cleaner is prepared by mixing the following ingredients:

| | |
|---|---|
| 2-Butoxyethanol | 60.03% |
| Sodium lauryl sulfate | 1.00% |
| Dimethyl glyoxime | 0.50% |
| Monoethanolamine (99%) | 15.00% |
| NPX (9.5 moles type) | 5.00% |
| Hexylene glycol | 18.47% |

The 2-butoxyethanol is agitated prior to addition of the sodium lauryl sulfate. After combining the foregoing ingredients, 0.80 fluid ounces of fragrance (Sassafras Fragrance 42180) and 0.8847 grams of Orco Milling Violet are added per gallon of cleaning concentrate.

## EXAMPLE 3

Neutralizer/Conditioner

A neutralizer/conditioner is prepared by mixing the following ingredients:

| | |
|---|---|
| 25% citric acid/hexylene glycol solution | 80.00% |
| Hexylene glycol | 10.75% |
| NPX (9.5 moles type) | 0.75% |
| Isopropyl alcohol-99% | 8.50% |

The hexylene glycol and NPX are added to the citric acid solution and mixed for 10 minutes. The composition will thin after addition of isopropyl alcohol hereinafter IPA).

## EXAMPLE 4

Laundry Detergent

A laundry detergent is prepared by mixing the following ingredients:

**6**

| | |
|---|---|
| DM | 73.87% |
| SLS | 6.00% |
| Dimethyl glyoxime | 1.00% |
| IPA-99% | 0.50% |
| Tinzinyl stilbene (Tinopal UNPA-GX) | 0.50% |
| Monoethanolamine | 1.52% |
| Linear alcohol ethoxylate (Surfonic LF-17) | 13.61% |
| d-limonene | 3.00% |

The DM, SLS and dimethyl glyoxime are combined first and allowed to mix for 10 minutes. The IPA and Tinopal are premixed to form a thick paste, and then added to the mixture and allowed to mix for 10 minutes before adding the monoethanolamine.

## EXAMPLE 5

Dish Detergent and Pot/Pan Cleaner

A dish detergent and pot/pan cleaner is prepared by mixing the following ingredients:

| | |
|---|---|
| Hexylene glycol | 10.00% |
| NPX (9.5 moles type) | 40.00% |
| Amine oxide (FMB A0-8) | 6.50% |
| S-10 coconut amide (2:1 cocoa diethanolamide condensate) (ESI) | 43.50% |

After combining the foregoing ingredients, 7.50 fluid ounces of fragrance (Lemon Joy) are added per gallon of cleaning concentrate.

## EXAMPLE 6

Flatware Presoak

A flatware presoak is prepared by mixing the following ingredients:

| | |
|---|---|
| NPX (9.5 moles type) | 42.00% |
| Amine oxide (FMB A0-8) | 5.00% |
| S-10 coconut amide | 36.00% |
| DM | 17.00% |

After combining the foregoing ingredients, 2.70 fluid ounces of fragrance (almond) and 0.40 grams of alizarine green GN are added per gallon of cleaning concentrate.

## EXAMPLE 7

Delimer

A delimer is prepared by mixing the following ingredients:

| | |
|---|---|
| 25% Citric acid/hexylene glycol solution | 80.00% |
| Hexylene glycol | 10.75% |
| NPX (9.5 moles type) | 0.75% |
| Isopropyl alcohol-99% | 8.50% |

The hexylene glycol and NPX are added to the citric acid solution and mixed for 10 minutes. The composition will thin after addition of isopropyl alcohol. Some of the isopropyl alcohol should be retained as a solvent for adding dye (Alizarine Green GN, 0.3840 grams/gal of composition) to the composition.

## EXAMPLE 8

Glass and Hard Surface Cleaner

6,037,319

**7**

A glass and hard surface cleaner is prepared by mixing the following ingredients:

| | |
|---|---|
| IPA-99% | 55.00% |
| 2-butoxyethanol | 37.00% |
| Monoethanolamine-99% | 3.00% |
| NPX (30 moles type) | 5.00% |

After combining the foregoing ingredients, 7.50 fluid ounces of fragrance (Windex 46952) and 1.62 grams of cyan dye (LX-9544) are added per gallon of cleaning concentrate.

EXAMPLE 9

Citrus All-Purpose Cleaner

A citrus all-purpose cleaner is prepared by mixing the following ingredients:

| | |
|---|---|
| 2-butoxyethanol | 13.50% |
| Hexylene glycol | 15.00% |
| d-limonene | 15.00% |
| SLS | 4.00% |
| Dimethyl glyoxime | 0.50% |
| Monoethanolamine-99% | 2.00% |
| Alkanolamide (NINOL 201) | 2.50% |
| NPX (9.5 moles type) | 47.50% |

The first four ingredients in the foregoing list are mixed together for 10 minutes before adding dimethyl glyoxime. After mixing for a further 10 minutes, the balance of the ingredients are added. After combining the foregoing ingredients, 1.37 fluid ounces of fragrance (Lemon Joy) and 1.20 grams of wool orange are added per gallon of cleaning concentrate.

EXAMPLE 10

Odor Suppressant

An odor suppressant is prepared by mixing the following ingredients:

| | |
|---|---|
| IPA-99% | 25.00% |
| Hexamethylene tetraamine | 1.00% |
| Propylene glycol (USP) | 18.30% |
| NPX (9.5 moles type) | 13.50% |
| Apple concentrate | 21.10% |
| Glassworks fragrance | 21.10% |

The hexamethylene tetraamine is mixed into the IPA. After combining the balance of the ingredients, 0.1353 grams of Alizarine Green GN and 0.0410 grams of Metanil Yellow Dye are added per gallon of cleaning concentrate.

EXAMPLE 11

Non-Acid Bowl and Bathroom Cleaner

A non-acid bowl and bathroom cleaner is prepared by mixing the following ingredients:

| | |
|---|---|
| 2-butoxyethanol | 15.40% |
| Hexylene glycol | 15.00% |
| d-limonene | 15.00% |
| SLS | 2.00% |
| Dimethyl glyoxime | 0.50% |
| Monoethanolamine-99% | 2.00% |

**8**

-continued

| | |
|---|---|
| NINOL 201 | 2.50% |
| NPX (9.5 moles type) | 47.60% |

After combining the foregoing ingredients, 1.37 fluid ounces of fragrance (Lemon Joy) and 0.80 grams of Red Oil Dye No. 2144 are added per gallon of cleaning concentrate.

EXAMPLE 12

Acidic Bowl and Bathroom Cleaner

An acidic bowl and bathroom cleaner is prepared by mixing the following ingredients:

| | |
|---|---|
| 25% citric acid/hexylene glycol solution | 80.00% |
| Hexylene glycol | 9.00% |
| NPX (9.5 moles type) | 2.50% |
| Isopropyl alcohol-99% | 8.50% |

The hexylene glycol and NPX are added to the citric acid solution and mixed for 10 minutes. The composition will thin after addition of isopropyl alcohol. Some of the isopropyl alcohol should be retained as a solvent for adding dye (Rhodamine B Extra, 0.1970 grams/gal of composition) to the composition. Baby powder fragrance is also added in an amount of 8.00 fluid ounces per gallon of composition.

EXAMPLE 13

Ball Wash

A ball wash is prepared by mixing the following ingredients:

| | |
|---|---|
| Hexylene glycol | 98.95% |
| Surfone LF-17 | 1.00% |
| N-alkyl dimethylbenzyl ammonium (BARDAC 208M) | 0.05% |

After combining the foregoing ingredients, 0.50 fluid ounces of lemon fragrance are added per gallon of cleaning concentrate.

EXAMPLE 14

Cleaning Concentrate Packets

The compositions of Examples 1–13 are packaged in water-soluble films as follows. Two polyvinyl alcohol films (M-8630, Monosol) measuring approximately 1 to 6 inches wide by 1 to 6 inches long (with the size selected based on the desired volume of the resulting packet) are heat sealed to each other along both longitudinal edges and along a line spaced about 0.2 inches from the bottom edge. As summarized in the following table, each polyvinyl alcohol packet is then filled with a unit dose (UD, in grams) of one of the example cleaning concentrates (EX) through the opening in the top portion of the pouch (see the following Table). Thereafter, the top portion is also heat sealed along a line spaced about 0.2 inches from the top edge.

| EX | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |
|----|----|----|----|----|----|----|----|----|----|----|----|----|
| UD | 30 | 45 | 45 | 45 | 30 | 20 | 12 | 12 | 12 | 12 | 12 | 12 |

Each packet is added to an amount of water appropriate for the unit dosage of cleaning concentrate contained

6,037,319

**9**

therein. The packets release their respective cleaning concentrates upon addition to water.

While the invention has been described in detail and with reference to specific examples thereof, it will be apparent to one skilled in the art that various changes and modifications can be made therein without departing from the spirit and scope thereof.

What is claimed is:

1. A cleaning packet comprising a liquid cleaning concentrate and a water-soluble container containing said concentrate, wherein said cleaning concentrate comprises less than 7.5 wt. % water, and said container comprises a single layer film having an internal surface directly contacting said concentrate, and having an external surface which is an outermost portion of said cleaning packet.

2. The cleaning packet according to claim 1, wherein said cleaning concentrate comprises not more than 2 wt. % water.

3. The cleaning packet according to claim 1, wherein said cleaning concentrate comprises less than 5.0 wt. % water.

4. The cleaning packet according to claim 1, wherein said cleaning concentrate comprises no more than 0.10 moles of organic amine per 100 grams of said concentrate.

5. The cleaning packet according to claim 4, wherein the cleaning concentrate comprises no more than 1 wt. % organic amine.

6. The cleaning packet according to claim 1, wherein the single layer film has a thickness of about 2 mils to about 4 mils.

7. The cleaning packet according to claim 1, wherein the single layer film is a polyvinyl alcohol film.

8. The cleaning packet according to claim 7, wherein the container consists essentially of said polyvinyl alcohol film.

9. The cleaning packet according to claim 1, wherein said cleaning concentrate comprises about 80.00 wt. % of a 25 wt. % citric acid/hexylene glycol solution, about 10.75 wt. % hexylene glycol, about 0.75 wt. % nonyl phenoxypolyethyleneoxy ethanol and about 8.50 wt. % of 99 wt. % isopropyl alcohol.

10. The cleaning packet according to claim 1, wherein said cleaning concentrate comprises about 10.00 wt. % hexylene glycol, about 40.00 wt. % nonyl phenoxypolyethyleneoxy ethanol, about 6.50 wt. % amine oxide and about 43.50 wt. % S-10 coconut amide.

11. The cleaning packet according to claim 1, wherein said cleaning concentrate comprises about 55.00 wt. % of 99 wt. % isopropyl alcohol, about 37.00 wt. % of 99 wt. % 2-butoxyethanol, about 3.00 wt. % of 99 wt. % monoethanolamine and about 5.00 wt. % nonyl phenoxypolyethyleneoxy ethanol.

12. The cleaning packet according to claim 1, wherein said cleaning concentrate comprises about 25.00 wt. % of 99 wt. % isopropyl alcohol, about 1.00 wt. % of hexamethylene tetraamine, about 18.30 wt. % propylene glycol, about 13.50 wt. % nonyl phenoxypolyethyleneoxy ethanol, about 21.10 wt. % apple concentrate and about 21.10 wt. % glassworks fragrance.

13. The cleaning packet according to claim 1, wherein said cleaning concentrate comprises about 80.00 wt. % of a 25 wt. % citric acid/hexylene glycol solution and about 9.00 wt. % hexylene glycol, about 2.50 wt. % nonyl phenoxypolyethyleneoxy ethanol and about 8.50 wt. % of 99 wt. % isopropyl alcohol.

14. The cleaning packet according to claim 1, wherein said cleaning concentrate comprises about 98.95 wt. % hexylene glycol, about 1.00 wt. % alcohol ethoxylate, and about 0.05 wt. % N-alkyl dimethylbenzyl ammnmonium.

15. A method for cleaning a non-textile surface, said method comprising:

**10**

providing a cleaning packet according to claim 1;

providing a volume of water;

adding said cleaning packet to said volume of water to dissolve the water-soluble container and dilute the cleaning concentrate within the container to form an aqueous cleaning composition; and

applying the aqueous cleaning composition to a non-textile surface to clean said surface.

16. The method according to claim 15, wherein said cleaning concentrate comprises not more than 2 wt. % water.

17. The method according to claim 15, wherein said cleaning concentrate comprises less than 5 wt. % water.

18. The method according to claim 15, wherein said cleaning concentrate comprises no more than 0.10 moles of organic amine per 100 grams of said concentrate.

19. The method according to claim 18, wherein the cleaning concentrate comprises no more than 1 wt. % organic amine.

20. The method according to claim 15, wherein the container comprises a single layer film having an internal surface directly contacting said concentrate, and having an external surface which is an outermost portion of said cleaning packet.

21. The method according to claim 20, wherein the single layer film has a thickness of about 2 mils to about 4 mils.

22. The method according to claim 20, wherein the single layer film is a polyvinyl alcohol film.

23. The method according to claim 22, wherein the container consists essentially of said polyvinyl alcohol film.

24. The method according to claim 15, wherein said cleaning concentrate is diluted to form a conditioner composition which cleans and conditions said surface, said cleaning concentrate comprising about 80.00 wt. % of a 25 wt. % citric acid/hexylene glycol solution, about 10.75 wt. % hexylene glycol, about 0.75 wt. % nonyl phenoxypolyethyleneoxy ethanol and about 8.50 wt. % of 99 wt. % isopropyl alcohol.

25. The method according to claim 15, wherein said cleaning concentrate is diluted to form a dishwashing composition which is applied to the surface of a dish, pot or pan to clean said surface, said cleaning concentrate comprising about 10.00 wt. % hexylene glycol, about 40.00 wt. % nonyl phenoxypolyethyleneoxy ethanol, about 6.50 wt. % amine oxide and about 43.50 wt. % S-10 coconut amide.

26. The method according to claim 15, wherein said cleaning concentrate is diluted to form a deliming composition which is applied to a corroded surface to delime and clean said surface, said cleaning concentrate comprising 80.00 wt. % of a 25 wt. % citric acid/hexylene glycol solution, about 10.75 wt. % hexylene glycol, about 0.75 wt. % nonyl phenoxypolyethyleneoxy ethanol and about 8.50 wt. % of 99 wt. % isopropyl alcohol.

27. The method according to claim 15, wherein said cleaning concentrate is diluted to form a glass and hard surface cleaning composition which is applied to a hard surface to clean said surface, said cleaning concentrate comprising about 55.00 wt. % of 99 wt. % isopropyl alcohol, about 37.00 wt. % 2-butoxyethanol, about 3.00 wt. % of 99 wt. % monoethanolamine and about 5.00 wt. % nonyl phenoxypolyethyleneoxy ethanol.

28. The method according to claim 15, wherein said cleaning concentrate is diluted to form an odor suppressing cleaning composition which is applied to a hard surface to suppress odors emanating from said surface and to clean said surface, said cleaning concentrate comprising about 25.00 wt. % of 99 wt. % isopropyl alcohol, about 1.00 wt. % hexamethylene tetraamine, about 18.30 wt. % propylene

6,037,319

**11**

glycol, about 13.50 wt. % nonyl phenoxypolyethyleneoxy ethanol, about 21.10 wt. % apple concentrate and about 21.10 wt. % glassworks fragrance.

**29.** The method according to claim **15**, wherein said cleaning concentrate is diluted to form an acid bowl and bathroom cleaning composition which is applied to the surface of a bathroom structure to clean said surface, said cleaning concentrate comprising about 80.00 wt. % of a 25 wt. % citric acid/hexylene glycol solution, about 9.00 wt. % hexylene glycol, about 2.50 wt. % nonyl phenoxypolyethyleneoxy ethanol and about 8.50 wt. % of 99 wt. % isopropyl alcohol.

**30.** The method according to claim **15**, wherein said cleaning concentrate is diluted to form a ball cleaning composition which is applied to the surface of a ball to clean said surface, said cleaning concentrate comprising about 98.95 wt. % hexylene glycol, about 1.00 wt. % alcohol ethoxylate, and about 0.05 wt. % N-alkyl dimethylbenzyl ammonium.

**31.** The method according to claim **15**, wherein said aqueous cleaning composition has a pH of 2 to 4.

**32.** The method according to claim **15**, wherein said aqueous cleaning composition has a pH above 8.5.

**33.** The method according to claim **15**, wherein said aqueous cleaning composition has a pH of 10 to 11.

**34.** The method according to claim **15**, wherein said cleaning concentrate comprises dimethyl glyoxime.

**35.** A cleaning packet comprising a liquid cleaning concentrate and a water-soluble container containing said concentrate, wherein said cleaning concentrate comprises dimethyl glyoxime and less than 10 wt. % water.

**36.** The cleaning packet according to claim **35**, wherein said cleaning concentrate comprises about 75.49 wt. % diimethyl monoethyl ether, about 8.00 wt. % sodium lauryl sulfate, about 0.50 wt. % dimethyl glyoxime and about 0.40 wt. % of 99 wt. % monoethanolamine, about 13.61 wt. % nonyl phenoxypolyethyleneoxy ethanol and about 2.00 wt. % water.

**37.** The cleaning packet according to claim **35**, wherein said cleaning concentrate comprises about 60.03 wt. % 2-butoxyethanol, about 1.00 wt. % sodium lauryl sulfate, about 0.50 wt. % dimethyl glyoxime, about 15.00 wt. % of 99 wt. % monoethanolamine, about 5.00 wt. % nonyl phenoxypolyethyleneoxy ethanol and about 18.47 wt. % hexylene glycol.

**38.** The cleaning packet according to claim **35**, wherein said cleaning concentrate comprises about 73.87 wt. % diglycol monomethyl ether, about 6.00 wt. % sodium lauryl sulfate, about 1.00 wt. % dimethyl glyoxime, about 0.50 wt. % of 99 wt. % trazinyl stilbene, about 1.52 wt. % monoethanolamine, about 13.61 wt. % alcohol ethoxylate and about 3.00 wt. % d-limonene.

**39.** The cleaning packet according to claim **35**, wherein said cleaning concentrate comprises about 42.00 wt. % nonyl phenoxypolyethyleneoxy ethanol, about 5.00 wt. % amine oxide, about 36.00 wt. % S-10 coconut amide and about 17.00 wt. % dimethyl glyoxime.

**40.** The cleaning packet according to claim **35**, wherein said cleaning concentrate comprises about 13.50 wt. % 2-butoxyethanol, about 15.00 wt. % hexylene glycol, about 15.00 wt. % d-limonene, about 4.00 wt. % sodium lauryl sulfate, about 0.50 wt. % dimethyl glyoxime, about 2.00 wt. % of 99 wt. % monoethanolamine, about 2.50 wt. % alkanolamide and about 47.50 wt. % nonyl phenoxypolyethyleneoxy ethanol.

**41.** The cleaning packet according to claim **35**, wherein said cleaning concentrate comprises about 15.40 wt. %

**12**

2-butoxyethanol, about 15.00 wt. % hexylene glycol, about 15.00 wt. % d-limonene, about 2.00 wt. % sodium lauryl sulfate, about 0.50 wt. % dimethyl glyoxime, about 2.00 wt. % of 99 wt. % monoethanolamine, and about 47.60 wt. % alkanolamide and about 47.60 wt. % nonyl phenoxypolyethyleneoxy ethanol.

**42.** A method for cleaning laundry, said method comprising:

provding a cleaning packet according to claim **38**;

providing a volume of water;

adding said cleaning packet to said volume of water to dissolve the water-soluble container and dilute the cleaning concentrate within the container to form an aqueous cleaning composition; and

applying the aqueous cleaning composition to said laundry to clean said laundry.

**43.** A method for cleaning a non-textile surface, said method comprising:

providing a cleaning packet according to claim **35**;

providing a volume of water;

adding said cleaning packet to said volume of water to dissolve the water-soluble container and dilute the cleaning concentrate within the container to form an aqueous cleaning composition; and

applying the aqueous cleaning composition to a non-textile surface to clean said surface.

**44.** The method according to claim **15**, wherein said cleaning concentrate is diluted to form a neutral floor cleaning composition which is applied to the surface of a floor to clean said surface, said cleaning concentrate comprising about 75.49 wt. % dimethyl monoethyl ether, about 8.00 wt. % sodium lauryl sulfate, about 0.50 wt. % dimethyl glyoxime, about 0.40 wt. % of 99 wt. % monoethanolamine, about 13.61 wt. % nonyl phenoxypolyethyleneoxy ethanol and about 2.00 wt. % water.

**45.** The method according to claim **43**, wherein said cleaning concentrate is diluted to form a floor cleaning composition which is applied to the surface of a floor to clean said surface, said cleaning concentrate comprising about 60.03 wt. % 2-butoxyethanol solvent, about 1.00 wt. % sodium lauryl sulfate, about 0.50 wt. % dimethyl glyoxime, about 15.00 wt. % of 99 wt. % monoethanolamine, about 5.00 wt. % nonyl phenoxypolyethyleneoxy ethanol and about 18.47 wt. % hexylene glycol.

**46.** The method according to claim **15**, wherein said cleaning concentrate is diluted to form a flatware pre-soak composition which is applied to the surface of flatware to clean said surface, said cleaning concentrate comprising about 42.00 wt. % nonyl phenoxypolyethyleneoxy ethanol, about 5.00 wt. % amine oxide, about 36.00 wt. % S-10 coconut amide and about 17.00 wt. % dimethyl glyoxime.

**47.** The method according to claim **15**, wherein said cleaning concentrate is diluted to form a citrus all-purpose cleaning composition which is applied to a hard surface to clean said surface, said cleaning concentrate comprising about 13.50 wt. % 2-butoxyethanol, about 15.00 wt. % hexylene glycol, about 15.00 wt. % d-limonene, about 4.00 wt. % sodium lauryl sulfate, about 0.50 wt. % dimethyl glyoxime, about 2.00 wt. % of 99 wt. % monoethanolamine, about 2.50 wt. % alkanolamide and about 47.50 wt. % nonyl phenoxypolyethyleneoxy ethanol.

**48.** The method according to claim **15**, wherein said cleaning concentrate is diluted to form a non-acid bowl and bathroom cleaning composition which is applied to the surface of a bathroom structure to clean said surface, said cleaning concentrate comprising about 15.40 wt. %

6,037,319

**13**

2-butoxyethanol, about 15.00 wt. % hexylene glycol, about 15.00 wt. % d-limonene, about 2.00 wt. % sodium lauryl sulfate, about 0.50 wt. % dimethyl glyoxime, about 2.00 wt. % of 99 wt. % monoethanolamine, about 2.50 wt. %

**14**

alkanolamide and about 47.60 wt. % nonyl phenoxypoly-ethyleneoxy ethanol.

*   *   *   *   *

# EXHIBIT B

Int. Cl.: 3

Prior U.S. Cls.: 1, 4, 6, 50, 51 and 52

Reg. No. 2,151,964

## United States Patent and Trademark Office

Registered Apr. 21, 1998

## TRADEMARK
### PRINCIPAL REGISTER

## PAK-IT

DICKLER CHEMICAL LABORATORIES, INC. (PENNSYLVANIA CORPORATION)
4201 TORRESDALE AVENUE, P.O. BOX 9523
PHILADELPHIA, PA 19124

FOR: ALL PURPOSE CLEANING PREPARA-
TIONS, IN CLASS 3 (U.S. CLS. 1, 4, 6, 50, 51 AND
52).

FIRST USE 11-5-1996; IN COMMERCE
11-5-1996.

SER. NO. 75-200,891, FILED 11-20-1996.

GERALD C. SEEGARS, EXAMINING ATTOR-
NEY

# EXHIBIT C



**Phone: 1-800-372-5090**

Search 

Home > Aqua ChemPacs > Glass Care > **GLASS AND HARD SURFACE CLEANER for quarts**

## GLASS AND HARD SURFACE CLEANER for quarts
**Product ID:** Q288
**SKU:** Q288



**Web Price:** $20.46



| Description |

Jar of 20 Pak-Its
One Pak-It yields 1 Quart

Pak-It Glass & Hard Surface Cleaner is an effective formulation which dissolves grease films, smears and fingerprints. Excellen
use on glass, windows, showcases and hard surfaces. Deposits an invisible coating that resists resoiling, smearing and fingerp
while effectively freshening the surrounding environment.

# EXHIBIT D



 Search

**Home** > **Aqua ChemPacs** > **Floor Care** > **Neutral Floor Cleaner-60 Ct Tub**

## Neutral Floor Cleaner-60 Ct Tub
**Product ID:** F199
**SKU:** F199



**Web Price:** $52.98



| Description |
| --- |

Tub of 60 Pak-Its
One Pak-It yields 1.5 - 2.5 Gallons

Pak-It Neutral Floor Cleaner is a concentrated deodorizing floor cleaner specially formulated to be used as part of a daily maintenance program for high-g floors. Thoroughly cleans dirt without dulling, hazing or marring the original finish. No rinsing is required.

# EXHIBIT E



Search 

**Home > Aqua ChemPacs > Kitchen Laundry Bath > NON-ACID BATHROOM & BOWL CLEANER for quarts**

## NON-ACID BATHROOM & BOWL CLEANER for quarts
**Product ID:** Q187
**SKU:** Q187



**Web Price:** $17.69

1  Add to Cart

| Description |
| --- |

Jar of 20 Pak-Its
One Pak-It yields 1 Qt of cleaner

Pak-It Non-Acid Bowl and Bath Cleaner quickly combats water deposits and other sediments without harsh acids or caustic chemicals. Effectively cleans and deodorizes toilet bowls,urinals, basins, tubs and tile. Biodegradable and phosphate-free.

# EXHIBIT F



**Phone: 1-800-372-5090**

Search 

**Home > Aqua ChemPacs > All Purpose Cleaning > CITRUS ALL PURPOSE CLEANER for quarts**

# CITRUS ALL PURPOSE CLEANER for quarts
**Product ID:** Q101
**SKU:** Q101



**Web Price: $21.12**

| 1 |  |

---

**Description**

Jar of 20 Pak-Its
One Pak-It yields 1 Qt of cleaner

Pak-It Citrus All-Purpose Cleaner is an excellent formulation that quickly removes dirt, grease and grime while leaving the surf
film free. Excellent for use on floors, walls, counters, equipment and painted areas. Cleans and deodorizes all washable surface
Biodegradable and phosphate-free.