# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BIG 3 PACKAGING, LLC,

        Plaintiff/Counter-Defendant,

v.

AQUA CHEMPACS, LLC, SIMONIZ USA, INC.,
STEPHEN SENECA, NATIONAL ACCOUNT
SOURCING, INC., CONSTANCE HAWK, JOAN MCGINN,
JOSEPH SOLITRO, VERNA SANCHEZ, and
MARCO SANCHEZ,

        Defendants/Counter-Plaintiffs/Third-Party Plaintiffs,

v.

RICHARD HIGGS,

        Third-Party Defendant.

Case No. 12-cv-05806-PBT
Hon. Petrese B. Tucker

---

## DEFENDANTS' MOTION FOR SANCTIONS PURSUANT TO
## FED. R. CIV. P. 11 JOINTLY AND SEVERALLY AGAINST
## (A) PLAINTIFF BIG 3 PACKAGING, LLC, (B) PLAINTIFF'S COUNSEL
## AND (C) PLAINTIFF'S PRINCIPAL THIRD-PARTY DEFENDANT RICHARD HIGGS

Defendants/Counter-Plaintiffs/Third-Party Plaintiffs Aqua ChemPacs, LLC, Simoniz

USA, Inc., Stephen Seneca, National Account Sourcing, Inc., Constance Hawk, Joan McGinn,

Joseph Solitro, Verna Sanchez, and Marco Sanchez ("Defendants") hereby move pursuant to

FED. R. CIV. P. 11 ("Rule 11") for sanctions against Plaintiff/Counter-Defendant Big 3

Packaging, LLC ("B3P" or "Plaintiff") its counsel in this action, and Third-Party Defendant

Richard Higgs based on their filing of the Complaint as well as the First Amended Complaint.

Specifically, both the original Complaint and the First Amended Complaint filed by B3P include

claims that (i) are frivolous and have no legal basis, (ii) have no evidentiary support, and/or (iii)

are clearly brought for purposes of harassment and to needlessly increase the cost of litigation.

Defendants/Counter-Plaintiffs/Third-Party Plaintiffs submit that sanctions are clearly warranted against B3P, Plaintiff's Principal Richard Higgs, the attorney who signed the Complaint and the First Amended Complaint, Michael Bonella, and the law firm representing B3P – Kessler Topaz, Metlzer & Check LLP.  The complete basis for the Motion is set forth in the accompanying brief.

Pursuant to the safe harbor provisions of Fed. R. Civ. P. 11(c), a detailed letter was served on Plaintiff on August 30, 2013[1] related to Count I of the First Amended Complaint (which also appeared on the Complaint) as well as the newly filed Counts X-XXI in the Amended Complaint.  Plaintiff has been repeatedly warned about the frivolity of its positions, but has continued to present them without any regard for the potential consequences. Plaintiff has failed, within the 21 day safe harbor period provided by Rule 11, to withdraw Counts I and X-XXI of the Amended Complaint and thus this Motion is properly presented.

WHEREFORE, Defendants respectfully request that this Court grant its Motion for Sanctions pursuant to Fed. R. Civ. P. 11 and sanction Plaintiff and its counsel, including in the amount of fees expended by Defendants defending against these frivolous claims.

Respectfully submitted,

**DICKINSON WRIGHT PLLC**

/s/ John S. Artz
John S. Artz
Jill S. Ingber
Bryan J. Schomer
2600 W. Big Beaver Road, Suite 300
Troy, MI 48084

jsartz@dickinsonwright.com
jingber@dickinsonwright.com

---

[1] *See* **Exhibit** 1.  This letter supplements the Notice letter sent to Michael Bonnella, dated December 18, 2012, attached herewith as **Exhibit 2.**

bschomer@dickinsonwright.com

*and*

**KLEHR HARRISON HARVEY BRANZBURG LLP**

Paul G. Nofer
1835 Market Street, Suite 1400
Philadelphia, PA  19103
(215) 569-3287
pnofer@klehr.com

*Attorneys for Defendants/Counter-Plaintiffs/Third-Party
Plaintiffs Aqua ChemPacs, LLC, Simoniz USA, Inc.,
Stephen Seneca, National Account Sourcing, Inc.,
Constance Hawk, Joan McGinn, Joseph Solitro, Verna
Sanchez, and Marco Sanchez*

Dated: September 23, 2013

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BIG 3 PACKAGING, LLC,

      Plaintiff/Counter-Defendant,

v.

AQUA CHEMPACS, LLC, SIMONIZ USA, INC.,
STEPHEN SENECA, NATIONAL ACCOUNT
SOURCING, INC., CONSTANCE HAWK, JOAN MCGINN,
JOSEPH SOLITRO, VERNA SANCHEZ, and
MARCO SANCHEZ,

      Defendants/Counter-Plaintiffs/Third-Party Plaintiffs

v.

RICHARD HIGGS,

      Third-Party Defendant.

Case No. 12-cv-05806-PBT
Hon. Petrese B. Tucker

---

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS PURSUANT TO
FED. R. CIV. P. 11 JOINTLY AND SEVERALLY AGAINST
(A) PLAINTIFF BIG 3 PACKAGING, LLC, (B) PLAINTIFF'S COUNSEL
AND (C) PLAINTIFF'S PRINCIPAL THIRD-PARTY DEFENDANT RICHARD HIGGS**

# TABLE OF CONTENTS

                                                                                           Page

I.      PRELIMINARY STATEMENT ............................................................................1

II.     INTRODUCTION AND RELEVANT FACTUAL BACKGROUND........................1

III.    ARGUMENT...................................................................................................4

        A.      Standard of Review....................................................................................4

        B.      Frivolous and Unsupported Claims Against the Employees

                1)      B3P's Frivolous and Unsupported Claims for Breach of Contract
                        Against the Employees (Counts XI-XV of the Amended Complaint) ..6

                2)      B3P's Claims for Breach of Duty of Loyalty Against the
                        Employees (Counts XVII-XXI of the Amended Complaint) ...............8

        C.      Frivolous and Unsupported Patent Infringement Claim
                (Count I of the Original Complaint) ................................................................11

        D.      Frivolous and Unsupported Claims Against Mr. Seneca
                (Counts X and XVI)....................................................................................13

                1.      B3P's Claim for Breach of Contract Against Mr. Seneca
                        (Count X of the First Amended Complaint) .......................................13

                2.      B3P's Claim for Breach of Duty of Loyalty Against Mr. Seneca
                        (Count XVI of the First Amended Complaint)....................................14

IV.     CONCLUSION.............................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Brown & Brown, Inc., et al. v. Cola, et al.*, 2010 U.S. Dist. LEXIS 106167 (E.D. Pa. 2010) ................................................................................................................................ 10

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) ........................................ 5

*Garr v. U.S. Healthcare*, 22 F.3d 1274, 1278 (3d Cir. 1994) ........................................ 5

*Hess v. Gebhard & Co.*, 808 A.2d 912, 922 (Pa. 2002) .............................................. 14

*In re: Target Industries, Inc.*, 2010 U.S. App. LEXIS 14052 (3rd Cir. 2010) .............................. 9

*Shriver v. Cichelli*, 1992 U.S. Dist. LEXIS 18562 (E.D. Pa. 1992) ................................ 7

*Teamsters Local Union No. 430 v. Cement Express, Inc.*, 841 F.2d 66, 68 (3d Cir. 1988)............ 5

*Walsh v. Irvin Stern's Costumes, et al.,* 2006 U.S. Dist. LEXIS 57398 (E.D. Pa. 2006)......... 9, 15

**Rules**

Rule 11(b) ...................................................................................................................... 5

Rule 11(c)....................................................................................................................... 5

## I.        PRELIMINARY STATEMENT

Defendants hesitate to bring the present motion because of the draconian nature of the requested relief.  However, this case presents the rare situation where sanctions are appropriate – and indeed necessary – to penalize Plaintiff for pursuing baseless claims that were clearly brought for purposes of harassment in an effort to extort a monetary settlement from Defendants. The groundless nature of this action is best exemplified by the fact that despite asserting breach of contract and breach of loyalty claims against six individual defendants, Plaintiff concedes that it does not have copies of these agreements and cannot attest to their existence or terms – which are necessary precursors to initiating such an action.  Similarly, Plaintiff has no reasonable basis to support its claim that the Aqua ChemPacs Accused Product has a single layer film which is undisputedly required by the '319 Patent.  Recognizing the dearth of evidence, Plaintiff erroneously seeks to shift the burden to Defendants to disprove all of these claims. Unfortunately, the law imposes a clear obligation on Plaintiff to have an evidentiary basis to support its claims in the first place prior to putting Defendants to the expense of defending against them.  Lacking any evidence or other good faith basis for this suit, Plaintiff and its counsel should be penalized for bringing this action which was clearly intended to harass Defendants in a plain violation of the Federal Rules.

## II.      INTRODUCTION AND RELEVANT FACTUAL BACKGROUND

This lawsuit arises from a bad investment made by Richard Higgs ("Higgs") and his company Big 3 Packaging, LLC ("B3P") in purchasing the assets of Pak-It, LLC ("Pak-It") -- a dwindling chemical cleaning supply-company on January 1, 2012 for $900,000.  Pak-It's primary assets included two utility patents.  One of those patents -- U.S. Patent No. 6,037,319

1

("the '319 Patent") -- is at issue in this suit.[2] While B3P obtained the '319 Patent when it entered into an Asset Purchase Agreement ("APA") with Pak-It, it is narrow and limited to a specific configuration that can be easily avoided. Notably, the APA clearly delineates what was transferred to B3P and no employment agreements or no rights under any employment agreements were transferred.

With virtually no remaining business and a balloon payment of $500,000 due July 1, 2013 as part of the APA, B3P began falsely telling those in the industry that Aqua ChemPacs, LLC ("Aqua ChemPacs" or "ACP") – who had displaced Pak-it in the marketplace prior to Higgs' acquisition of the above assets -- was infringing B3P's rights in the '319 Patent in an improper attempt to divert business back to B3P and generate revenue. When that failed, B3P filed the instant lawsuit in October 2012 against Mr. Seneca, ACP, Simoniz USA, Inc. ("Simoniz"), National Account Sourcing, Inc. ("NAS") and Floor Mechanics, LLC ("Floor Mechanics")[3](*See* Complaint), and concurrently sent copies directly to ACP's customers in a heightened attempt to divert business to B3P.   In its Complaint, B3P claims that, *inter alia*, ACP is willfully violating B3P's patent rights by using Dickler Chemical's and/or Pak-It's intellectual property, now owned by B3P.  (*Id.*)  Specifically, B3P contends that ACP is infringing upon the '319 Patent (Count I) for its water-soluble cleaning packet (*Id.*)  Defendants timely answered the Complaint and asserted various counterclaims for declarations that the '319 Patent was not infringed and is invalid, and for unfair competition based on the fact that B3P was reaching out to ACP's customers and others in the industry to falsely advise that Defendants were infringing the '319 Patent.  (*See* Answer).

---

[2] A copy of the '319 Patent is attached as **Exhibit 3**.

[3] B3P settled its dispute with Floor Mechanics in December 2012.  Floor Mechanics was then dismissed from the Lawsuit.

As set forth in more detail below, B3P and their counsel either made no reasonable inquiry into the claims of patent infringement prior to filing the Complaint or the results of any such inquiry were plainly ignored in bad faith. In fact, as was memorialized and brought to the attention of counsel for B3P on more than one occasion since the filing of this lawsuit (*See* e.g. the letter sent to Michael Bonnella, dated December 18, 2012, attached as **Exhibit 1**, as well as the letter sent to Michael Bonnella dated August 30, 2013, attached as **Exhibit 2**), B3P's claim for infringement of the '319 Patent lacks merit as the Accused ACP Products quite simply do <u>not</u> employ the "single layer film" limitation that is factually and legally required to support their claim of patent infringement.[4]   Indeed, the Aqua ChemPacs product employs the same configuration as prior art packages to the '319 Patent. Faced with this uncontroverted fact, B3P still continues to maintain its meritless claims of patent infringement in the Amended Complaint.

Since initiating the instant lawsuit, B3P has also taken the position that Mr. Seneca and five former employees of Pak-It, LLC ("Employees") violated unidentified employment agreements and otherwise breached common law duties to Dickler Chemical, Pak-It, JBI and/or B3P. However, B3P has yet to produce a single employment agreement for Mr. Seneca or any one of these named Employees to substantiate its assertions in this regard as no such employment agreements exist. The original Complaint is also telling in this regard because, although it makes reference to various business tort allegations by Mr. Seneca, including theft of confidential information, the Complaint did not assert a breach of duty of loyalty, or even a breach of an employment agreement, claim against Mr. Seneca. Correspondingly, the original Complaint did not assert a single claim against the Employees relating to a breach of an employment agreement or a breach of a duty of loyalty. As such, Defendants objected to all

---

[4] The criticality of this limitation is undisputed as it was specifically inserted into the claim to secure its allowance.

discovery requests related to these issues which were simply served as part of an improper fishing expedition to obtain documents to form the basis of new claims.

In summary, since the onset of the instant lawsuit, Plaintiff has never possessed executed employment agreements or other credible evidence on which to base a breach of contract claim. Otherwise they would have surely have produced these employment agreements in response to the Defendants' repeated requests to do so. However, having largely failed with the aforementioned disparagement campaign, B3P stooped even lower in the instant lawsuit and on August 1, 2013, despite having no employment agreements, and with absolutely no legal support for its position, amended its Complaint to add claims against Mr. Seneca, and each of the Employees for breaches of employment agreements and breaches of duties of loyalty. (*See* Amended Complaint, Counts X through XXI).

Plaintiff has refused to withdraw the frivolous and unsupported claims in the Amended Complaint, even though placed on notice of Defendants' intent to file the subject Rule 11 Motion. Accordingly, the Plaintiff's actions have forced Defendants' to seek the recovery of the unreasonable attorneys' fees they have been required to incur in the instant lawsuit as a result of B3P's pursuit of groundless claims.

## III.   ARGUMENT

### A.   Standard of Review

Rule 11(b) provides in relevant part that an attorney signing a complaint is "certifying that to the best of the person's knowledge, information, and belief, *formed after an inquiry reasonable under the circumstances*," that (1) "it is not being presented for any improper purpose ...;" (2) "the claims ... therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;" and (3)  "the allegations and other factual contentions have evidentiary support or, if

specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery."  Under Rule 11(c), sanctions may be imposed for violations of Rule 11(b).

The U.S. Supreme Court has held that the "central purpose of Rule 11 is to deter baseless filings" by imposing a duty on attorneys to certify that they have "conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact and legally tenable."  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990); *see also Teamsters Local Union No. 430 v. Cement Express, Inc.*, 841 F.2d 66, 68 (3d Cir. 1988) (holding that the purpose of the rule is to prevent abusive litigation and misuse of the court's process). The Third Circuit has clearly established requirements for the imposition of sanctions pursuant to Rule 11.  "The signer's signature on a pleading, motion, or other paper certifies the signer has done three things: (1) read the pleading, motion, or paper; (2) made a reasonable inquiry into the contents of the pleading, motion, or other paper and concluded that it is well grounded in fact and warranted in law; and (3) has not acted in bad faith in signing the document.  The court determines the reasonableness of an inquiry by applying an objective standard."  *Garr v. U.S. Healthcare*, 22 F.3d 1274, 1278 (3d Cir. 1994) (internal citations omitted).  "[A] signer making an inadequate inquiry into the sufficiency of the facts and law underlying a document will not be saved from a Rule 11 sanction by the stroke of luck that the document happened to be justified." *Id*. at 1279.

**B.**     **Frivolous and Unsupported Claims Against the Employees**

    **1)**     **B3P's Frivolous and Unsupported Claims for Breach of Contract Against the Employees (Counts XI-XV of the Amended Complaint)**

As is fully addressed in Defendants' Motion to Dismiss Counts X-XXI of the First Amended Complaint filed on August 30, 2013 ("Defendants' Motion to Dismiss"), incorporated herein in its entirety, B3P and their respective attorneys egregiously ignored the glaring fatal defects in its newly-added breach of contract claims against the Employees (*See* Counts XI-XV of the Amended Complaint).  Specifically, as set forth on Pages 12-16 of the Defendants' Motion to Dismiss, B3P's breach of contract claims against the Employees are wholly without merit because: (1) no employment agreements have ever existed to support B3P's breach of contract claims against the Employees, (2) even if the Employees had signed employment agreements as alleged, they would be invalid, (3) even if the Employees had signed valid agreements, B3P would not have been a party to them and did not acquire the rights to enforce them.

In accordance with the Preliminary Statement, B3P has never been able to prove the very first and basic element that is required to support all breach of contract claims, i.e., that a contract even exists.  B3P did not initially assert the breach of contract claims when the Complaint was filed, and further failed to attach any employment agreements to the Amended Complaint for the simple reason that none of the Employees signed any such agreement with Pak-It or JBI.  Indeed, B3P improperly and urgently sought to obtain these illusory documents from Defendants during discovery and were informed that no such documents exist.  Nothing has changed.  This glaring defect in B3P's claims is further highlighted by the fact that B3P was required to attach and rely upon an employment agreement in the Amended Complaint that was purportedly entered in May 2010 between JBI and John Fattori, *a non-party to this lawsuit*.  Put another way, if employment agreements with the Employees did exist, the Plaintiff would have

attached them to the Amended Complaint instead of relying on evidence associated with a non-party to the lawsuit. Whatever agreements Mr. Fattori may or may not have entered with JBI are wholly irrelevant to B3P's claims against the Employees and do not, by any measure, prove the existence of similar contracts between JBI and the Employees.[5]  B3P's desperate reliance on Mr. Fattori's signed contract only highlights the obvious factual and legal deficiency of the newly-added claims.

Moreover, even to the extent B3P could prove that the Employees executed similar agreements, no consideration existed to validate them. See *Shriver v. Cichelli*, 1992 U.S. Dist. LEXIS 18562 (E.D. Pa. 1992) (the "law is clear that where a restrictive covenant is executed after the commencement of employment, it will not be enforced unless the employee restricting himself receives a corresponding benefit or change in status.")  B3P does not dispute that no additional compensation was given to the Employees and similarly does not dispute that without that compensation, any purported contracts could not be enforced.

Finally, to the extent B3P could prove that the Employees signed valid employment agreements, they would have been with JBI, Pak-It, or possibly Dickler Chemical – not B3P, which did not acquire JBI until February of 2012 after the Employees had each left.  Despite B3P's conclusory, self-serving, and unsupported assertion to the contrary, B3P did not acquire the rights to any such agreements through the Asset Purchase Agreement with Pak-It. Indeed, while B3P contends that it acquired rights to the asserted employment contracts pursuant to the APA, it does not even attach the APA to its Amended Complaint.  When the actual terms of the APA are analyzed, it flatly contradicts the assertions made by B3P.

---

[5] This is the sole reason proffered by Plaintiff as to why it believes the Employees executed employment agreements.  This is certainly not sufficient to satisfy the objectively reasonable standard.

The Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss Counts XI and XVI of Plaintiff's First Amended Complaint ("Plaintiff's Memorandum in Opposition") is telling with regard to the groundless and meritless character of these breach of contract claims against the Employees.  In the Defendants' Motion to Dismiss, at least 5 pages of the Brief are devoted to addressing why the newly-added breach of contract claims lack factual and legal merit.   However, the Plaintiff's Memorandum in Opposition does not challenge a single argument presented by Defendants in this regard.   Instead, the Plaintiff's Memorandum in Opposition simply states that "B3P is willing to dismiss these claims without prejudice."

Although Defendants continuously pointed out the factual and legal barriers to B3P prior to the filing of their Amended Complaint, B3P disregarded them completely and filed the amended pleading anyway, and thus proceeded to force five blameless individuals to participate in what was previously a straightforward commercial dispute.  B3P's recent action to now offer dismissal of these claims clearly indicates that B3P was aware that the breach of contract claims were frivolously added to the lawsuit, and thus never had legal or factual basis.   Instead, the breach of contract claims were simply brought in the Amended Complaint for purposes of harassment and to needlessly increase the cost of litigation as an attempt to strong-arm a settlement offer from the Defendants.  For these reasons, the breach of contract claims are a clear and glaring violation of the Federal Rules and thus are sanctionable under Rule 11.

**2)     B3P's Claims for Breach of Duty of Loyalty Against the Employees (Counts XVII-XXI of the Amended Complaint)**

As also fully addressed in the Defendants' Motion to Dismiss, incorporated herein in its entirety, even a cursory review of the Third Circuit case law would have revealed that B3P and their respective attorneys egregiously ignored the glaring legal defects in its newly added breach of duty of loyalty claims against the Employees (*See* Counts XVII-XXI of the Amended

Complaint). Specifically, as set forth on Pages 16-20 of the Defendants' Motion to Dismiss, B3P's breach of duty of loyalty claims against the Employees are wholly without merit because: (1) the Employees owed no duty of loyalty to JBI, Pak-It, or Dickler Chemical after leaving the company, (2) the duty of loyalty claims are time-barred, and (3) the breach of duty of loyalty claims are barred by the "Gist of the Action" rule. For these reasons, and as set forth in more detail below, the filing of the duty of loyalty claims against the Employees are equally sanctionable under Rule 11.

In more detail, even a cursory review of Third Circuit case law by B3P prior to filing the First Amended Complaint would have exposed that the Employees owed no duty of loyalty to JBI, Pak-It, or Dickler Chemical – let alone to B3P – after their employment ended. Indeed, absent an employment contract, employees only owe a common law duty of loyalty as long as the employment lasted. *In re: Target Industries, Inc.*, 2010 U.S. App. LEXIS 14052 (3rd Cir. 2010). In other words, after their employment ended, the Employees owed no duty of loyalty to Pak-It as a matter of law.

Before filing its First Amended Complaint, B3P and its counsel for same were certainly aware that none of the Employees held officer or director positions at Pak-It, that none of them signed employment agreements, and that each had either resigned from, or was terminated from, Pak-It prior to joining Aqua ChemPacs. Thus, by the time each of the Employees were hired by Aqua ChemPacs, any duties of loyalty the Employees may have had to JBI/Pak-It had long been terminated. Moreover, the newly-added claims of the Amended Complaint were brought too late pursuant to the two-year statute of limitations for tort claims. *Walsh v. Irvin Stern's Costumes, et al.,* 2006 U.S. Dist. LEXIS 57398 (E.D. Pa. 2006). B3P and its counsel were well aware that the Employees began leaving Pak-It by June of 2010 and all were gone by July 2011. Because none

of them signed employment agreements, each of their duties to Pak-It terminated upon their resignation or termination. Any breaches of loyalty by the Employees had to necessarily have occurred prior to the Employees' respective departures, when any such duties could only have existed. Thus, to be timely, B3P's breach of loyalty claims had to be filed within two years of the Employees' resignation and/or termination dates – July 1, 2013 at the latest. B3P failed to assert these claims until August 1, 2013. Finally, because any duty of loyalty owed after the Employees' employment would have been contractual, the tort claims are barred by Pennsylvania's "gist of the action" doctrine, which precludes plaintiffs from recasting breach of contract claims into tort claims. *Brown & Brown, Inc., et al. v. Cola, et al.*, 2010 U.S. Dist. LEXIS 106167 (E.D. Pa. 2010).

Once again, the Plaintiff's Memorandum in Opposition is telling with regard to the meritless character of these newly-added breach of duty of loyalty claims against the Employees as it does not challenge a single argument presented in the Defendants' Motion to Dismiss and instead simply states that "B3P is willing to dismiss these claims without prejudice." Similar to the breach of contract claims, B3P egregiously ignored and disregarded the relevant legal barriers when bringing their newly-added breach of duty of loyalty claims by way of the Amended Complaint. B3P's recent action to now offer dismissal of these claims clearly indicates that B3P was aware that the breach of duty of loyalty claims were frivolously added to the lawsuit, and thus never had legal or factual basis. Instead, similar to the breach of contract claims, the breach of duty of loyalty claims were simply brought in the Amended Complaint for purposes of harassment of the Employees and to needlessly increase the cost of litigation and an attempt to coerce a settlement from the Defendants. For these reasons, the breach of duty of loyalty claims are equally sanctionable under Rule 11.

C.    **Frivolous and Unsupported Patent Infringement Claim**
      **(Count I of the Original Complaint)**

B3P's claim of patent infringement (Count I) as filed in the original Complaint has also been pursued in violation of Rule 11. As presented to B3P throughout the instant lawsuit, the ACP accused product employs a multi-layer film and thus no objective good faith basis has ever existed to construct an infringement argument in view of the claims of the '319 Patent.[6]  In support of these prior representations, Defendants previously provided B3P with various Film Data Sheets from Monosol which independently establish that ACP's product employs "a multilayer film", as opposed to the single layer required by the claims of the '319 Patent, and formally produced these documents during discovery.  (*See* **Exhibit 4** - ACP 000024, ACP 000130, ACP 000453 and ACP 000455).

Prior to this production, Defendants even advised B3P in a letter dated December 18, 2012 (*See* **Exhibit 1**) that a reasonable inquiry into the ACP product would have indisputably confirmed that the accused ACP product does not employ a single layer as is required by the claims of the '319 Patent.  This same letter put BeP on notice that, as is well known to one of ordinary skill in the art, B3P's reliance solely on a visual inspection of the film as used in the ACP product was technically inadequate to distinguish between the presence of a single layer or a multi-layer, and thus not a reasonable basis on which to base a comparison of the asserted claims of the '319 Patent to the accused product.   As such, Defendants respectfully submit that Count I of the instant lawsuit has always been based on a manifestly unreasonable assessment of infringement that subjects B3P to attorney fees under Rule 11.

In a letter dated December 18, 2012 (*See* **Exhibit 2**), Defendants even suggested to B3P a more refined analytical technique that would have definitively revealed the existence of a multi-

---

[6] To the extent B3P could somehow argue that Count I of the original Complaint was not objectively baseless, it was clearly on notice of its deficiencies well before it filed Count I of the Amended Complaint.

11

layer film in the Aqua ChemPacs product.  Pursuit of this advice at this time by B3P or its counsel would have substantiated the contentions that B3P's allegations of infringement of the '319 patent lack legal and factual merit.  However, ignoring this advice, and pursuant to Fed. R. Civ. P. 11, B3P and its counsel simply cannot certify that to the best of their knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that the allegations and other factual contentions of patent infringement as set forth in both the original Complaint and the First Amended Complaint have evidentiary support.

While B3P contends that the Aqua ChemPacs product satisfies the single layer limitation of claim 1, B3P has failed to provide a single piece of evidence to substantiate this position.  The simple reason is because B3P cannot provide evidence to support its contention that the Aqua ChemPacs product employs a single layer film, and thus **can not** attest to a reasonable inquiry of its claim of patent infringement (Count I).  To exemplify the factual deficiencies in B3P's infringement contentions, Defendants provided B3P with two separate independent test reports that indisputably demonstrate that the film used by Aqua ChemPacs in its product constitutes a multi-layer film.  (See **Exhibit 5,** ACP001281-001286.)  For at least these reasons, the Defendants respectfully submit that there is no reasonable position that B3P could or can assert to establish infringement by the Aqua ChemPacs Accused Products.  Accordingly, B3P's patent infringement claim (Count I in both the Original Complaint and the Amended Complaint) is frivolous, has no evidentiary support, and was simply brought to harass Defendants.  For at least these reasons, B3P's claim of patent infringement has been pursued in violation of Rule 11.

D.    **Frivolous and Unsupported Claims Against Mr. Seneca (Counts X and XVI)**

B3P's claims against Mr. Seneca for breach of employment agreement and breach of duty of loyalty are equally baseless.

### 1.    B3P's Claim for Breach of Contract Against Mr. Seneca (Count X of the First Amended Complaint

As set forth on Pages 20-23 of Defendants' Motion to Dismiss, incorporated herein in its entirety, B3P's breach of contract claim (Count X of the First Amended Complaint) is wholly without merit because, *inter alia*,: (1) Mr. Seneca never signed an employment agreement, and (2) even if Mr. Seneca signed an employment agreement, B3P cannot enforce same.   Put another way, as set forth on Pages 2-5 of the Reply Brief In Support of Defendants' Motion to Dismiss Counts X-XXI of First Amended Complaint ("Defendants' Reply Brief"), filed concurrently herewith and incorporated herein in its entirety, B3P's breach of contract claim against Mr. Seneca is baseless because: (1) without a signed contract, B3P has no valid breach of contract claims, (2) the APA does not transfer to B3P the right to enforce an employment agreement as alleged, and (3) even if an argument could be made that the APA transferred such an agreement, B3P does not contend that Seneca attested to the transfer of this agreement as is legally required.

B3P is well aware that Mr. Seneca never signed an employment agreement.  This is perhaps best exemplified by the fact that B3P did not attach a copy of the employment agreement to the First Amended Complaint, and has yet to produce a copy of the executed agreement, even though faced with Defendants repeated requests to do so.  This is simply because an executed employment agreement does not exist.  Indeed, it is clear that B3P recognized the lack of support for the breach of contract claim against Mr. Seneca when B3P failed to include it in the original Complaint, even though Mr. Seneca was named as an original party.  In fact, the best evidence B3P has been able to produce since October 2012 has been an e-mail exchange and an unsigned,

working draft of an employment agreement.  B3P's reliance on an unsigned draft and its failure to attach e-mails wherein JBI openly acknowledges that no agreement was ever executed by Mr. Seneca, is particularly reflective of B3P's bad faith pursuit of this claim.  Without an executed contract, there simply is no valid contract claim.

Even if Mr. Seneca signed an agreement, B3P would still be unable to enforce its terms.  Indeed, if Mr. Seneca had signed the draft of the employment agreement, it would have been with Pak-It, not B3P.  Again, B3P did not acquire JBI until February 2012, nearly two years after Mr. Seneca left the company.  Thus, B3P would not have been a party to any agreement with Mr. Seneca.  Despite the nebulous assertions in the First Amended Complaint, B3P did not acquire the rights to any such agreement through the APA, which makes no reference to any employment agreements and specifically exempts assets of the prior businesses from the transaction.  Even if the APA referenced such an agreement, without an assignability provision in the purported agreement itself, B3P could not enforce the agreement.  See *Hess v. Gebhard & Co.*, 808 A.2d 912, 922 (Pa. 2002) ("a restrictive covenant not to compete, contained in an employment agreement, is not assignable to the purchasing business entity, in the absence of a specific assignability provision, where the covenant is included in a sale of assets").

### 2. B3P's Claim for Breach of Duty of Loyalty Against Mr. Seneca (Count XVI of the First Amended Complaint)

As set forth on Pages 23-25 of the Defendants' Motion to Dismiss, incorporated herein in its entirety, B3P's duty of loyalty claims against Mr. Seneca are also untenable for the reasons that (1) Mr. Seneca owed no duties to Pak-It as of August 2010, much less to B3P, and (2) Mr. Seneca did not take any confidential information.  Additionally, as set forth on Pages 5-6 of the Defendants' Reply Brief, incorporated herein in its entirety, B3P's duty of loyalty claims against Mr. Seneca lack legal and factual basis because (3) B3P's duty of loyalty claim against Mr.

Seneca is time-barred, and (4) the APA did not transfer Pak-It's right to sue for breach of duty of loyalty.

B3P's breach of duty of loyalty claim against Mr. Seneca is no stronger than the spurious ones B3P asserts against the Employees. Although Seneca served as an officer of Pak-It, he never worked for B3P and thus never owed any duty to B3P. Indeed, Mr. Seneca severed ties with Pak-It nearly *two years* before B3P even acquired its parent company, JBI. While it is true that an officer owes a duty of loyalty to its company, Mr. Seneca never served as an employee of B3P, much less as an officer. To the extent Mr. Seneca owed any duties of loyalty, such duties would have been owed to Pak-It or JBI. At no time did Mr. Seneca owe any duty to B3P. In fact, the claim is entitled "Mr. Seneca's Breach of Duty of Loyalty to *JBI, Dickler Chemical, and Pak-It*," thus acknowledging that the duty would have been owed to the entities for whom Seneca previously served. In Plaintiff's Memorandum in Opposition, it now asserts that the APA transferred to B3P Pak-It/JBI's right to sue for breach of any duty of loyalty. However, there is absolutely no support for this contention in the APA. Instead, Section 7(J)(vi) of the APA, as cited by Plaintiff, is silent on the transfer of any tort claims. Further, even if the APA did transfer the subject tort claim, the Pennsylvania statute of limitations for tort claims, like B3P's breach of duty of loyalty claim, is two years. *Walsh v. Irvin Stern's Costumes, et al.,* 2006 U.S. Dist. LEXIS 57398 (E.D. Pa. 2006). Thus, to be timely, any breach of duty of loyalty claim against Mr. Seneca would have had to be brought by August of 2012. B3P did not assert this claim until a whole year later.

For at least the above reasons, B3P's claims of breach of contract and breach of duty of loyalty against Mr. Seneca (Counts X and XVI) have been pursued in violation of Rule 11.

## IV.   <u>CONCLUSION</u>

By affixing their names to the Amended Complaint, counsel for B3P certified that they made a reasonable inquiry into the facts and law and that the pleadings were well-grounded in both.  However, even a cursory inquiry into the relevant facts (with which B3P was well aware) and the well-established legal principles discussed above as well as in the Motion to Dismiss show that B3P has never had a legal basis on which to pursue Counts I and X-XXI of the First Amended Complaint.   Thus, and in accordance with Rule 11, Defendants submit that the subject motion for sanctions against B3P, Plaintiff's Principal Richard Higgs, the attorney who signed the Complaint and the First Amended Complaint, Michael Bonnella, and the law firm representing B3P – Kessler Topaz, Metlzer & Check LLP, is warranted and respectfully request the grant of same.

Respectfully submitted,

**DICKINSON WRIGHT PLLC**

/s/ John S. Artz
John S. Artz
Jill S. Ingber
Bryan J. Schomer
2600 W. Big Beaver Road, Suite 300
Troy, MI 48084
(248) 433-7200
jsartz@dickinsonwright.com
jingber@dickinsonwright.com
bschomer@dickinsonwright.com

*and*

**KLEHR HARRISON HARVEY BRANZBURG LLP**

Paul G. Nofer
1835 Market Street, Suite 1400
Philadelphia, PA  19103
(215) 569-3287
pnofer@klehr.com

16

*Attorneys for Defendants/Counter-Plaintiffs/Third-Party Plaintiffs*

Dated: September 23, 2013

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2013, I filed the foregoing **DEFENDANTS'
MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11 JOINTLY AND
SEVERALLY AGAINST (A) PLAINTIFF BIG 3 PACKAGING, LLC, (B) PLAINTIFF'S
COUNSEL AND (C) PLAINTIFF'S PRINCIPAL THIRD-PARTY DEFENDANT
RICHARD HIGGS** and **BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR
SANCTIONS PURSUANT TO FED. R. CIV. P. 11 JOINTLY AND SEVERALLY
AGAINST (A) PLAINTIFF BIG 3 PACKAGING, LLC, (B) PLAINTIFF'S COUNSEL
AND (C) PLAINTIFF'S PRINCIPAL THIRD-PARTY DEFENDANT RICHARD HIGGS**
with the Court using the ECF system, which will send notification of such filing to all attorneys
of record.


/s/Mary Ellen Donovan
Mary Ellen Donovan